THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

EDWARD O'CONNOR.

*Filed at Springfield January 14, 1895.*

1. DEEDS—*construction, as to boundaries fixed by acts of parties.* Where a deed conveying land is of doubtful construction as to boundaries, the construction given to it by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary is shown.

2. LIMITATIONS—*title by twenty years' adverse possession.* The owner of the fee of lands acquires a good title, as against the claim of right of way of a railroad company, under the twenty years' statute of limitations, by his cultivating and pasturing the land for over thirty years, during which time it is fenced with the rest of his land, and not included within the fences of the railroad company. *Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233, followed.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Appellee brought his action in ejectment in the court below, against appellant, to recover possession of a piece of land in McLean county which he claimed in fee, described in his declaration as "beginning at a point fifty feet west of the center of the Illinois Central Railroad Company's track; thence west fifty feet; thence south forty rods, to the south line of the south-west quarter of section 15, in township 23, range 1, east; thence east fifty feet; thence north to the point of beginning." A jury were waived, and the case submitted to the court on the following agreed statement of facts:

"That April 29, 1852, James C. Harbord was the owner in fee of the tract on both sides of defendant's right of way, including this strip and defendant's right of way, and on that day conveyed to defendant, 'for the purpose of constructing, maintaining and operating thereon a single or double-track railroad, with all its necessary appurtenances, and for all the uses and purposes con-

nected with the construction, repair, maintenance and complete operation of said railroad, the right of way over and through said tract, said right of way to comprise land of the width of two hundred feet, to have and to hold the same to said company and its successors and assigns forever, for all lawful uses and purposes incident to a full and indefeasible title in fee simple, or in any way connected with the construction, preservation, occupation and sole enjoyment of the said railroad and lands, of the width aforesaid: *Provided, however*, that said railroad company shall erect and maintain such lawful fences as will divide the land occupied by said company from the adjoining lands on each side, and as far as possible prevent intrusion upon or passage across said lands and railroad occupied by the company;' that defendant, shortly after the execution of this deed, erected a substantial post-and-board fence fifty feet from the center of its main track, on each side, so that said fence enclosed land of the width of one hundred feet, or fifty feet on either side, leaving the strip of land in controversy outside its fences, and that Harbord joined his farm fences with these fences, and occupied and used this strip of land as he did the residue of his farm, continuing in possession, raising crops and pasturing until June 4, 1860, when he conveyed the entire tract to John Duncan, excepting and reserving as follows: 'Excepting and reserving the right of way for the Illinois Central Railroad Company. * * * For a more full description of such reservation, reference is made to a deed on record from said parties of the first part to said Illinois Central Railroad Company, in recorder's office;' that Duncan went into immediate possession and used the land the same as Harbord had done, occupying and using the same up to the company's fences, until August 13, 1861, when he conveyed it to Richard O'Connor, excepting and reserving the right of way heretofore deeded by Harbord to the railroad company. O'Connor took immediate possession of the

premises under said deed and occupied it, using all of it up to the fences, renting it at different times, cultivating and pasturing the strip in question the same as the residue of the tract, to the time of his death, February 1, 1873, when, by the terms of his will, duly probated, the land conveyed by said deed became the property of his widow, Margaret O'Connor, who held, occupied and used the same, including the strip in controversy, just as her husband had done in his lifetime. Some time in 1886 the company took down the fence and erected a new one fifty feet farther from the track, thus entering into and taking possession of the land in controversy. June 18, 1892, Margaret O'Connor died, devising the land to plaintiff. The charter of defendant shall be considered in evidence, and it is admitted that defendant is in possession of its right of way through the said lands conveyed to it by Harbord, and has been in such possession since the date of the Harbord deed, except that the said strip in controversy has been used as aforesaid, and has operated its line of railroad. It is further admitted that defendant has promptly paid the per cent of its earnings required by the laws of Illinois under the provisions of said charter."

The circuit court gave judgment for the plaintiff, and the defendant appeals.

WILLIAMS & CAPEN, for appellant:

The owner of the fee who grants an easement has a right to the use of the land in any way that does not impair the use of the easement, and no act of the owner of the fee, by such use, can be construed into a claim adverse to the easement. Cutting timber and grazing or cultivating the soil are all acts that the owner of the fee has a right to do, provided they do not hinder or disturb the use of the easement. *Town of Old Town* v. *Dooley*, 81 Ill. 255; Angell on Highways, sec. 302-304, *et seq.; Railway Co.* v. *Hartley*, 67 Ill. 439; *Railway Co.* v. *Railroad Co.*

100 id. 21; *Wiggins Ferry Co.* v. *Railroad Co.* 94 id. 83 ; Washburn on Easements, chap. 2, p. 158.

Acceptance of a deed, and taking possession thereunder, estop the grantee from asserting title different from the terms of his deed. *Pinckard* v. *Milmine*, 76 Ill. 453 ; *Warren* v. *Jacksonville*, 15 id. 236 ; Bigelow on Estoppel, (2d ed.) 239 ; *Railroad Co.* v. *Oyler*, 82 Ind. 394; *Railroad Co.* v. *Borough of Freeport*, 138 Pa. St. 91; *Bloomington* v. *Cemetery Ass.* 126 Ill. 221; *Railroad Co.* v. *McCaskill*, 94 N. C. 746.

The adverse use which will give title, by prescription, to an easement, must be hostile in its inception, adverse, and under a claim of right. Am. & Eng. Ency. of Law, sec. 4; *Dexter* v. *Tree*, 117 Ill. 532 ; *Quincy* v. *Jones*, 76 id. 231; *Railway Co.* v. *Hoag*, 90 id. 339 ; *Railway Co.* v. *Galt*, 133 id. 657; *Bryan* v. *East St. Louis*, 12 Ill. App. 390.

The doctrine of adverse possession is to be taken strictly against the claimants, and is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of the land owner. *Bryan* v. *East St. Louis*, 12 Ill. App. 390 ; *Creekmur* v. *Creekmur*, 75 Va. 430.

Possession commenced by permissive entry does not become adverse until disclaimer by assertion of adverse title and notice. 1 Am. & Eng. Ency. of Law, p. 251, sec. 19; *Hudson* v. *Putney*, 14 W. Va. 561.

As the Illinois Central Railroad Company does not pay any taxes, under its charter, upon specific tracts of its lands, the seven years' statute of limitations does not apply as against it. *Wisner* v. *Chamberlin*, 117 Ill. 568.

THOMPSON & DONAHUE, for appellee :

The railroad company is a stranger to the deed made to Richard O'Connor, so the rule of estoppel does not apply. *Brizaloro* v. *Semour*, 82 Ky. 353 ; *Lenney* v. *Wood*, 66 Tex. 22 ; Tiedeman on Real Prop. sec. 731.

Even if the right of way is but an easement, it is such an easement that the railroad company has the exclusive

control and enjoyment of it.   *Railway Co.* v. *Houghton,* 126 Ill. 233 ; *Pitcher* v. *Railway Co.* 38 Kan. 516 ; *Walch* v. *Railroad* Co. 1 West, (Mo. App.) 393 ; *Wiley* v. *Railway Co.* 96 N. C. 408.

The twenty years' statute of limitations applies in the case at bar.   *Railway Co.* v. *Houghton,* 126 Ill. 233 ; *Blair* v. *Kiger,* 111 Ind. 193 ; *Turney* v. *Chamberlain,* 15 Ill. 271.

The grant was too uncertain to pass any legal title to the railroad company.   *Carter* v. *Barnes,* 26 Ill. 455 ; *Coker* v. *Koberts,* 71 Tex. 579 ; *Lumber Co.* v. *Coker,* 70 id. 312 ; *Messer* v. *Ostreich,* 52 Wis. 684; *Whitney* v. *Robinson,* 53 id. 309 ; *Turney* v. *Brown,* 65 Miss. 563 ; *Railway Co.* v. *Barrett,* 67 id. 579.

The deed provided that the railroad company should build a fence, so as to separate its lands from the adjoining lands, and by so doing it gave construction to the deed made by Harbord to it, and fixed the boundaries, and after a lapse of so long a time it is estopped to dispute the boundary.   *Fisher* v. *Brumhoff,* 121 Ill. 426 ; *Horn* v. *Smith,* 79 Tex. 310 ; *Sheets* v. *Sweeney,* 146 Ill. 342 ; *Prickett* v. *Wilson,* 71 Wis. 542 ; *Eldridge* v. *Kenney,* 59 Hun, 615.

WILKIN, C. J.:   That the plaintiff below has a perfect title to the fee of the premises in controversy is admitted by the stipulation of facts.   All that the defendant claims is, that he held that title subject to an easement in it for right of way for its railroad.   The first question suggested upon a consideration of the facts agreed upon by the parties is, has the defendant shown any title whatever to such an easement over this land?   Its deed from Harbord did not, by its description, state out of what part of the tract the two hundred feet for right of way should be taken, nor did it convey, as is sometimes done, a certain number of feet on either side of the center of the track.   Therefore, until the grantee, by some act on its part, other than the mere location of its track, designated the land claimed by it under the deed, no easement

was acquired over any particular land. But when the company came to assert its rights under its deed it took no possession of this piece of land, nor, so far as the agreed facts show, did it in any way indicate that it claimed an easement over it. The deed itself did not specifically convey this fifty feet, nor did the grantee, in exercising its rights under it, assert any title whatever thereto, but, on the contrary, in taking possession under its deed excluded it,—fenced it out of its right of way. There is nothing in the facts of the case tending to show that it, by act or declaration, construed its deed to include this land for more than thirty years after its date and taking possession under it. "Where a deed conveying land is of doubtful construction as to the boundaries, the construction given by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary be clearly shown." (*Leonard* v. *Clark*, 1 Metc. 378.) We are at a loss to perceive how it can be maintained that an easement over the land in suit was acquired by the defendant.

But waiving this view of the case, the judgment below is right. Assuming that a right of way was acquired by the defendant to the premises in controversy under its deed from Harbord of April 29, 1852, the controlling question in the case is, had the plaintiff below acquired a good title, as against such right of way, under the twenty years' statute of limitations, at the time the defendant took possession, in 1886. If he had, his right to use that title, in this form of action, to regain possession is clear, and the case, in all its material facts, is like *Illinois Central Railroad Co.* v. *Houghton et al.* 126 Ill. 233, and must be controlled by the decision in that case.

It is said the *Houghton case* "differs from this, in that there, at the time the railroad company built its fence, Walker claimed, when he joined his fence to it, that he owned up to the fence, and that by a compromise with the railroad company the line was established at the

fence; also, that Park's administrator had the land sur-
veyed up to the fence, and sold it by the acre according
to that measurement, and the court, from these facts,
held that the possession was adverse." There is nothing
in the *Houghton case* to show that Walker claimed to own
to the railroad fence except by his acts, and certainly
nothing to indicate that by compromise between him and
the company the line was established at the fence. As
shown by the opinion in that case, no such fact entered
into its consideration and decision. While it did appear
there that the land was sold by the administrator of
Park to Houghton to the fence, that sale was not made
until June, 1873,—less than fourteen years prior to the
bringing of that suit. Hence that fact was not, as also
appears from the opinion, the basis of the decision. It
was insisted in that case, as it is here, that the Statute
of Limitations did not run against appellant, because,
its right of way being but an easement and the fee re-
maining in its grantor and his subsequent grantees, who
had a lawful right to any possession and use of the land
consistent with the company's exercise of its right to the
easement, there was no hostile or adverse occupancy,—
and that, in the most favorable view of the case to appel-
lant, is the controlling question here. We did not then,
nor do we now, ignore the general rule that where an
easement exists over land, the owner of the servient
estate may occupy and use the premises as he pleases,
so long as he does not interfere with the use of the ease-
ment, and therefore such occupancy and use are never
adverse. The exercise of the one right in such a case is
consistent with the existence and exercise of the other.

But we held in the *Houghton case,* upon the authorities
cited and for the reasons given in the opinion, that, in
view of the peculiar character of the easement which
this appellant acquired in the land covered by its right
of way, the case was not within that rule, and we said:
"While we are not disposed to hold that the deed from

Walker to the plaintiff conveyed to the plaintiff an estate in fee in the right of way, it is clear that it conveyed an estate which, so far as the right of possession for railroad purposes is concerned, had most of the qualities of the fee. The right of possession thereby conveyed was exclusive, and was wholly inconsistent with the subsequent possession of the land, or any part of it, by the grantor or his assigns for purposes of grazing or agriculture, or as a part of the farm to which it originally belonged." After a careful reconsideration of the question we can discover no sufficient reason for departing from the conclusion there announced. To say that to enclose the right of way of a railroad with farm lands, cultivate and pasture the same, and use it in all respects as the lands with which it is enclosed, for agricultural purposes, does not impair its use by the railroad for right of way, is, to our minds, absurd. While the argument of counsel proceeds upon the assumption that the two uses are not incompatible with each other, the facts clearly prove that the railroad company had a very different understanding. For more than thirty years it abandoned all use of the land, fenced it out of its right of way, and allowed it to remain in the exclusive possession and use of the owner of the fee. When it desired to use it, it attempted to exclude the owner of the servient estate from the same. It is not denied that if the controversy between these parties had been as to the ownership of the fee simple title to the premises, plaintiff's possession would have been a complete bar, under the Statute of Limitations, to any right in the defendant, and we are at a loss to perceive how, under the facts of the case, it is less so as against the claim to a mere easement. See *Peake* v. *Nace*, 2 Whart. 123; *Galveston* v. *Williams*, 69 Tex. 449.

In any view which can be taken of the case the judgment of the circuit court is right, and should be affirmed.

*Judgment affirmed.*