MATTHEWS *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

Adverse Possession—Hostility of Occupancy—Railroad Right of Way—Extinguishment.

> An easement for a railroad right of way is extinguished as to land which is inclosed by the owner of the fee with his remaining premises, and used by him for ordinary farming purposes, continuously, and without the assent of the railroad company, for more than 15 years, notwithstanding he had the right to the use of such land to the extent that it was not required for the purposes of the road.

Error to Monroe; Kinne, J. Submitted June 19, 1896. Decided July 8, 1896.

Trespass *quare clausum fregit* by Daniel A. Matthews against the Lake Shore & Michigan Southern Railway Company. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*C. E. Weaver* and *I. R. Grosvenor* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*Landon & Lockwood*, for appellee.

Montgomery, J.   In July, 1871, the predecessor of the defendant company obtained a right of way for a railway, 100 feet in width, being 50 feet on each side of the surveyed line, extending through the land upon which the village of Carleton is now situated.   In October, 1872, Charles A. Kent conveyed to the railway company and its successors the right to enter upon and conduct, maintain, and operate its railroad and appurtenances in and upon a strip 50 feet in width, lying south of the first-named 100-foot strip.   Subsequently, and on the 7th of April, 1875, Kent conveyed 40 acres of land to the plaintiff, which included the lands the right of way over which was last deeded to the railroad company.   This deed was a quitclaim, and was recorded April 10, 1875. During the summer of 1874 the railroad company built a fence on the south side of the first 100-foot strip, past the land in question.   In November, 1876, the plaintiff inclosed all the land south of the fence with the remaining portion of his 40, and has since continued to use the land for crops, grass, and pasturage, until the time of the alleged trespass.   The defendant, in 1894, extended the fence so as to include the 50 feet south of the first right of way, being parcel of the 40 acres deeded to the plaintiff. The plaintiff thereupon brought this action of trespass. On the trial it appeared that the plaintiff had occupied the lands, as above stated, for more than 15 years, without any assent by the railway company.   The circuit judge instructed the jury that the plaintiff had acquired title by adverse possession.   The defendant brings error, and contends that the occupancy of the plaintiff was not such as to ripen into a title, for the reason that the plaintiff had the right to occupy the land, and use it for

any purpose, as long as its use was not deemed necessary by the railroad company.

The precise question involved was recently determined by the supreme court of Illinois in the case of *Illinois Central R. Co.* v. *O'Connor*, 154 Ill. 550. The court say in that case:

"For more than 30 years it [the railroad company] abandoned all use of the land, fenced it out of its right of way, and allowed it to remain in the exclusive possession and use of the owner of the fee. When it desired to use it, it attempted to exclude the owner of the servient estate from the same. It is not denied that, if the controversy between these parties had been as to the ownership of the fee-simple title to the premises, plaintiff's possession would have been a complete bar; and we are at a loss to perceive how, under the facts of the case, it is less so as against the claim to a mere easement."

We think this decision is in harmony with the previous rulings of this court, in which it has been determined that the owner of abutting land may acquire title good as against the public, by an occupancy for the statutory period. See *Gregory* v. *Knight*, 50 Mich. 61; *Coleman* v. *Railroad Co.*, 64 Mich. 160; *City of Big Rapids* v. *Comstock*, 65 Mich. 78.

We recognize the doctrine contended for by defendant's counsel to the extent that, if the use of the owner of the servient estate be consistent with its use for an existing easement, the owner of the servient estate cannot acquire title by such possession; and it is not to be denied that there are cases which fully sustain the contention of defendant's counsel. These cases originated with the case of *Union Pacific R. Co.* v. *Kindred*, 43 Kan. 134, where, upon facts very similar to those in this case, it was held that title was not acquired by the owner of abutting property who fenced in a portion of the right of way with his own land, and used it for the statutory period. This case was followed by the supreme court of Tennessee in *East Tennessee, etc., R. Co.* v. *Telford's Ex'rs*, 89

Tenn. 293, and a similar holding was made in *Slocumb*
v. *Railway Co.*, 57 Iowa, 675. It is to be noted that, in
the case of *Union Pacific R. Co.* v. *Kindred*, the court
relies for authority sustaining its position, in part, upon
*McClelland* v. *Miller*, 28 Ohio St. 488, which was a high-
way case, and inconsistent with the cases. cited above
from our own reports.

We think the use of this strip of land by the plaintiff
must be held to have been wholly inconsistent with the
right of the railway company. Certainly the defendant
could not at any time have occupied the land for its pur-
poses while it was thus inclosed by the plaintiff. This
being the case, we think the occupancy of the plaintiff
amounted to an assertion of ownership inconsistent with
the defendant's claim, and was such an occupancy as has
ripened into title by adverse possession.

The judgment is affirmed.

The other Justices concurred.