Timothy Donahue

*v.*

The Illinois Central Railroad Company.

*Filed at Springfield April 3, 1897.*

1. Limitations—*bar of twenty years' statute applied to right of way.* Twenty years' uninterrupted, open, adverse and exclusive possession of a portion of a railroad company's right of way by a party claiming to own the same bars the rights of the company therein.

2. Same—*title acquired by twenty years' limitation available for purposes of attack.* Whenever the bar of the twenty years' statute of limitations becomes absolute, and the party entitled is in possession under it, it is thereafter as available for purposes of attack as of defense, whether the occupant continues in the actual possession or not.

3. Same—*when defense of seven years' statute cannot be sustained.* The defense of the seven years' statute to ejectment against a railroad company cannot be sustained, in the absence of evidence in the record to show that the company had ever listed the land with the Auditor, as required by its charter, or that the Auditor had ever assessed any taxes against the land, or against the railroad company, as owner.

4. Taxes—*when right of way, originally exempt, becomes taxable property.* Land originally part of a railroad company's right of way, and as such exempt from taxation except as provided by the company's charter, which ceases to be the company's property through the bar of the twenty years' statute, is thereafter liable to assessment and taxation as other private property.

Writ of Error to the Circuit Court of McLean county; the Hon. Thomas F. Tipton, Judge, presiding.

Thompson & Donahue, for plaintiff in error:

The plaintiff acquired title to this land by the adverse use of it for twenty years. *Railroad Co.* v. *Houghton*, 126 Ill. 233; *Railroad Co.* v. *O'Connor*, 154 id. 550; *Railroad Co.* v. *Moore*, 160 id. 9.

The charter of the company is a contract with the State, and is construed the same as any other contract. The payment of seven per cent of its gross earnings is not the payment of a tax in compliance with either the

sixth or seventh sections of the Statute of Limitations, but the payment of a debt created by the contract of the company with the State, and nothing short of twenty years will give the company title. *Railroad Co.* v. *Irwin*, 72 Ill. 452; *Railroad Co.* v. *People*, 95 id. 313; *Vincennes* v. *Gas Light Co.* 132 Ind. 114; Cooley on Taxation, (2d ed.) 1, 4, 17; *Telegraph Co.* v. *Myers*, 28 Ohio St. 521; Anderson's Law Dic. 1006; *Merriweather* v. *Garnett*, 102 U. S. 513; *Lane Co.* v. *Oregon*, 7 Wall. 80; *Price* v. *Boston*, 3 Metc. 520; *Perry* v. *Washburn*, 20 Cal. 318; *Webster* v. *Seymour*, 8 Vt. 135; *Johnson* v. *Harwood*, 41 id. 122; *Finnegan* v. *Fernandina*, 15 Fla. 379; *Edmunson* v. *Galveston*, 53 Tex. 157.

If this land is exempt from general taxation the seven years' statute of limitations has no application. *Wisner* v. *Chamberlin*, 117 Ill. 568.

Twenty years' adverse possession of land which is burdened with an easement will extinguish the easement. *Johnson* v. *Peoria*, 56 Ill. 45; *Winnetka* v. *Prouty*, 107 id. 225; 2 Wood on Railways, sec. 240; *Norton* v. *Railway Co.* L. R. 13 Ch. Div. 268; Washburn on Easements, 654-657; *Steere* v. *Tiffany*, 13 R. I. 568; *Bently* v. *Root*, 32 Atl. Rep. 918; *State* v. *Culver*, 55 Mo. 607; *Coleman* v. *Railroad Co.* 64 Mich. 163; *Simplot* v. *Dubuque*, 49 Iowa, 630; *Bardslee* v. *French*, 7 Conn. 125; *Holt* v. *Sargent*, 15 Gray, 97; *Amsby* v. *Hinds*, 46 Barb. 623; 3 Kent's Com. (11th ed.) 448; *Corning* v. *Gould*, 16 Wend. 531; *Wright* v. *Freeman*, 5 H. & J. 477; *Emerson* v. *Wiley*, 10 Pick. 310; *Yeakle* v. *Nace*, 2 Whart. 123; *Smith* v. *Langewald*, 140 Mass. 205.

WILLIAMS & CAPEN, for defendant in error:

The Limitation act does not transfer the title to the land. This can only be done in a judicial proceeding. The act under such an interpretation would be unconstitutional. *Harding* v. *Butts*, 18 Ill. 502; *Newland* v. *Marsh*, 19 id. 376; *Hinchman* v. *Whetstone*, 23 id. 185; *Gage* v. *Smith*, 142 id. 191; *Cook* v. *South Park Comrs.* 61 id. 115.

Statutes of limitation work only upon the basis of a possession. See cases above cited.

It is not necessary that the payment of the taxes for the seven years should be the years immediately following the date of acquiring the title. Any subsequent continuous seven years' payment, joined with the other requisites, satisfies all requirements. Starr & Curtis' Stat. chap. 83, sec. 6; *Newland* v. *Marsh,* 19 Ill. 376; *Dunlap* v. *Daugherty,* 20 id. 397; *Hinchman* v. *Whetstone,* 23 id. 185; *McConnel* v. *Street,* 17 id. 253.

A plaintiff cannot avail himself of the twenty years' statute of limitations after he has lost possession. The only effect of a statute of limitations is as an armor of defense. *McDuffee* v. *Sinnott,* 119 Ill. 449; see cases *supra.*

Color of title, within the meaning of section 6, chapter 83, of our statute, may be given without any deed or other writing. It may begin in trespass. *McClellan* v. *Kellogg,* 17 Ill. 498; *Lancey* v. *Brock,* 110 id. 609.

Mr. Justice Carter delivered the opinion of the court:

This is a writ of error to the circuit court of McLean county, brought to reverse a judgment for the defendant in an action of ejectment. The suit was brought by plaintiff in error to recover the east fifty feet of lot 44 and the east fifty feet of lot 42, on the west side of the railroad of defendant in error, and the west fifty feet of lot 37 on the east side of said railroad, all in section 10, township 23, north, in McLean county. Defendant in error was in possession claiming the land as a part of its right of way.

It was agreed that in 1853 these strips were a part of a larger tract, and belonged to three persons by the name of Hodge, and that that year defendant in error, by proper proceedings in the McLean circuit court, condemned for its right of way a strip through said larger tract, of the width of two hundred feet, and made payment therefor, of which strip the pieces in controversy were a part.

Soon after, the precise year not being shown, defendant fenced its track, by erecting fences on each side thereof fifty feet from the center line.   These fences were maintained there, on the east side until the fall of 1882 and on the west side until the fall of 1885.   The Hodges retained possession of the remaining strips of fifty feet, (the property in dispute,) and conveyed them with other lands, and they passed by *mesne* conveyances to plaintiff, the successive grantees from the Hodges taking and maintaining possession thereof and using and cultivating these strips as parts of the larger tracts to which they were attached, up to the railroad fences.   This possession was continued by the Hodges and subsequent grantees for nearly thirty years upon the one side, until 1882, and upwards of thirty years on the other, until 1885, when the defendant moved its fences fifty feet further out and took in the strips as a part of its right of way, as before stated.   In 1878, long after the twenty years' statute of limitations had run against defendant in error, the Hodge tract was subdivided into lots as an addition to the city of Bloomington, and a survey and plat of the same were made by the county surveyor, which were recorded in 1881.   This plat showed the right of way of the defendant through the tract to be one hundred instead of two hundred feet wide.   Lots 37, 42 and 44, of which the strips in controversy appear to form a part, were created and designated by this plat.   The map or plat of record with the condemnation proceedings, however, showed the right of way was two hundred feet wide.

While there is evidence tending to show that the defendant company, in 1870 or 1872, put in short posts, painted white, at certain road or street corners on the outer lines of the right of way of two hundred feet in width as condemned, still, from the evidence and agreed facts, it is clear that plaintiff and his grantors had been in the open, exclusive and adverse possession of the property, claiming to own it, for more than twenty years,

when defendant moved out its fences and took possession
of the land in 1882 and 1885, and that at that time its
rights therein were barred by limitation. In this respect
the case does not materially differ from *Illinois Central Rail-
road Co.* v. *Houghton,* 126 Ill. 233, *Illinois Central Railroad Co.*
v. *O'Connor,* 154 id. 550, and *Illinois Central Railroad Co.* v.
*Moore,* 160 id. 9.

It is, however, contended by defendant, that at the
time of the commencement of the suit it had been in pos-
session, under claim and color of title made in good faith,
for more than seven successive years, and had during all
that time paid all taxes legally assessed on said lands,
and was therefore entitled, under the statute, to be ad-
judged the legal owner,—and this defense seems to have
been sustained by the circuit court. Plaintiff does not
dispute that defendant took actual possession of the
lands, respectively, in the fall of 1882 and of 1885, and
continued in such possession until this suit was brought
by him in the fall of 1895, but he contends, first, that
defendant did not have such possession under claim and
color of title made in good faith; and second, that it did
not, during such possession, pay all taxes legally assessed
upon the premises for seven successive years. The strips
in question were assessed for taxes as parts of the lots
of which they appeared to form a part,—that is, the lots
were assessed and these strips were parts of them, and
these taxes seem to have been paid by the owners of the
lots. It was proved by plaintiff that he paid the taxes
on lots 37, 42 and 44 from 1882 to 1895, inclusive, and he
gave in evidence tax receipts showing such payment,
except for the years 1888 and 1892. The defendant com-
pany paid none of these taxes so assessed, but did pay
seven per cent of its gross earnings under the provisions
of its charter, which it claims included all taxes which
were or could be lawfully assessed against the property.

The charter of defendant in error (Laws of 1851, p. 61,)
provides in section 3 that it "shall have the right of way

upon, and may appropriate to its sole uses and control, land not exceeding two hundred feet in width through its entire length." Section 14 provides that it shall cause to be made "maps of the parts thereof located in the different counties through which the same may pass, and cause the same to be recorded in the office for recording deeds in the county in which said parts of said road and branches shall lie." Section 18 provides: "In consideration for the grants, privileges and franchises herein conferred upon said company for the purposes aforesaid, the said company shall, on the first Mondays of December and June in each year, pay into the treasury of the State of Illinois five per centum on the gross or total proceeds, receipts or income derived from said road and branches for the six months then next preceding." Section 22 provides: "After the expiration of six years the stock, property and assets belonging to said company shall be listed by the president, secretary or other officer with the Auditor of the State, and an annual tax for State purposes shall be assessed by the Auditor upon all the property and assets of every name, kind and description belonging to said corporation.  *  *  *  The said corporation is hereby exempted from all taxation of every kind, except as herein provided for.  *  *  *  The said five per cent of gross or total proceeds, receipts or income aforesaid shall be paid into the State treasury in money, and applied to the payment of interest-paying State indebtedness, until the extinction thereof: *Provided*, in case the five per cent provided to be paid into the State treasury, and the State taxes to be paid by the corporation, do not amount to seven per cent of the gross or total proceeds, receipts or income, then the said company shall pay into the State treasury the difference, so as to make the whole amount paid equal at least to seven per cent of the gross receipts of said corporation."

The right of way of the defendant company was by its charter, which had the force of a contract with the State,

exempt from all taxation except for State purposes. (*Neustadt* v. *Illinois Central Railroad Co.* 31 Ill. 484.) If the property had been exempt from taxation altogether, then the defendant's possession, which began as to one piece of the land in 1882 and as to the others in 1885, could only have become available, as against the plaintiff, after the lapse of twenty years, for if there were no taxes to pay because of such exemption the seven years' statute would have no application. *Wisner* v. *Chamberlin*, 117 Ill. 568.

Plaintiff claims that defendant paid no taxes during the ten or more years it was in possession, but paid only the seven per cent of its gross earnings under its contract with the State, which contract exempted its property from taxation. If the property in question was a part of the company's right of way it was exempt from all but State taxes. But it had ceased to be a part of such right of way, and had become the private property of plaintiff and was liable to assessment for taxes generally as other private property, and it was, as we have seen, assessed for taxes as parts of the lots to which it was attached, and plaintiff, and not defendant, paid these taxes. It is difficult, therefore, to see how it can be maintained, under the evidence, that the defendant paid "all taxes legally assessed against such lands" during any seven years while it was in possession. Outside of the mere fact that the company continued to pay, as it had theretofore done, the percentage of its gross earnings required by its contract with the State, there is no evidence that it paid any taxes on this property at all, and as these strips had ceased to belong to the company, the seven per cent, even if otherwise sufficient as payment of taxes, did not cover these strips. There were taxes which were legally assessed against it as the property of plaintiff, but the company did not pay them. Besides, we must regard it as a fatal objection to the defendant's claim of payment that there is no evidence in the record that these lands were ever listed with the Auditor of

State and that the Auditor assessed any tax against them, or against the company as their owner, as required by the charter. There is no evidence that any property of the company was listed with the Auditor and that it was assessed for State purposes. How, then, can it be judicially determined as a fact necessary to be affirmatively established, that defendant in error paid any such taxes? In order to bring itself within the seven years' statute of limitations it was incumbent on defendant to prove affirmatively that it had complied with the requirements of the statute, and not having done so in the respects mentioned it failed in its defense.

It is claimed, however, by defendant, that when plaintiff lost his possession he had no title under which he could become the aggressor and by ejectment oust defendant of its possession. This position is not tenable. As said in *McDuffee* v. *Sinnott*, 119 Ill. 449 (on p. 452): "It is now well settled in this State that whenever the bar of the statute has become absolute, and the party entitled is in possession under it, it is thereafter just as available for attacking as for defensive purposes, and its availability in this respect will not depend at all upon the occupant continuing in the actual possession of the property. His rights in that respect are precisely the same as those of any other absolute owner of land. He can vacate it or occupy it, just as convenience or interest may dictate." See, also, *Sholl* v. *German Coal Co.* 139 Ill. 21; *Illinois Central Railroad Co.* v. *Moore, supra.*

The circuit court erred in not finding the issues for the plaintiff and in rendering judgment for the defendant. The judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*