[No. 3681.   Decided June 29, 1901.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant,* v.
WILLIAM S. ELY *et al., Respondents.*

ADVERSE POSSESSION — OCCUPATION OF RIGHT OF WAY — INCONSIS-
TENCY WITH EASEMENT — LIMITATION OF ACTION.

Adverse possession of portions of a railroad right of way, for
purposes inconsistent with the company's use of the easement,
maintained by the adverse occupant for the statutory period of
limitation prescribed against actions for the recovery of real
property, will bar an action by the company to recover possession
thereof.   (*Northern Counties Investment Trust v. Enyard,* 24
Wash., 366, distinguished).

SAME — ESTOPPEL.

Where a railroad company stands by without objection for
more than ten years and permits portions of its land grant for
right of way to be acquired by settlers under the preemption and
homestead laws of the United States, who, together with their
grantees, plat said land into city lots, make valuable improve-
ments thereon, and expend large sums of money for taxes and
for street improvements assessed against said lots, the company
is estopped from asserting title to those portions of its right of
way thus occupied.

SAME — DEFENSE OF PUBLIC POLICY.

Where, through the negligence and laches of a railroad com-
pany, the occupancy by others of portions of the right of way
granted to it by the government has ripened into title by ad-
verse possession, the company cannot set up the defense that the
right of way was granted for public purposes only and that it
would be against public policy to permit either its abandonment
by the company or the acquisition of adverse rights therein by
way of estoppel or of the bar of the statute of limitations.

Appeal from Superior Court, Spokane County.—Hon.
LEANDER H. PRATHER, Judge.   Affirmed.

*Stephens & Bunn* (*C. W. Bunn* and *James B. Kerr,* of
counsel), for appellant.

*Frank T. Post, Samuel R. Stern, Frederick W. Dewart,
James Dawson, Henley, Kellam & Lindsley,* and *Joseph
Rosslow,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the Northern Pacific Railway Company, successor to the Northern Pacific Railroad Company, to recover possession of certain portions of its right of way in the county of Spokane. The complaint alleges that the plaintiff was the owner and entitled to the possession of a strip of land 400 feet wide, and that defendants had wrongfully entered thereon, and judgment was demanded for the removal of a cloud, for the quieting of title to the lands mentioned in the complaint, and for the possession of same. Separate answers were interposed by many of the defendants, separate trials had, and separate verdicts rendered. A single judgment, however, was rendered, determining all the issues in the case.

It may be conceded, we think, that the right of way which embraces the land in dispute was granted to the Northern Pacific Railroad Company by act of congress in 1864, and that, to the title to the right of way thus granted to the Northern Pacific Railroad Company, the Northern Pacific Railway Company has succeeded. It may also be conceded, for the purposes of this case, that the Northern Pacific Railway Company has complied with all the terms and provisions of the act of congress aforesaid, and has constructed its railroad through the whole of the line of road between the points named in the granting act; that a map of definite location was filed October 4, 1880, prior to the acquiring of the title to the land in question by the defendants or their predecessors or grantors; and that said railroad has been continuously operated since its construction. The defendants, answering, claim title by patent from the United States government. The land was acquired under the pre-emption and homestead acts, respectively, and all the defendants or their grantors have been

25—25 WASH.

in quiet, peaceful, undisturbed, and undisputed possession of said land for more than ten years immediately prior to the commencement of this action, many of them for nearly twenty years. Valuable improvements have been made by the defendants, the said land consisting of town lots in the city of Spokane, and having been platted and laid out as additions to the city of Spokane by the defendants or their grantors after acquiring title to the same from the United States government. During all these years no claim whatever to these lands has been made by the appellant. It has stood by and seen improvements made thereon, and, in the case of defendant Brown, an agreement was entered into between him and General Sprague, who was then the general superintendent of the Northern Pacific Railroad Company, that they would plat their lots so that the streets of the addition which the railroad company was dedicating would correspond with and meet the streets which Brown was dedicating to the city of Spokane, and the agreement was carried out by arranging the streets in accordance therewith. These streets have been used by the public for from ten to eighteen years. The testimony shows that, in addition to the improvements which these defendants have made upon their lots, many thousands of dollars have been paid by them for assessments levied upon abutting land for the improvement of streets running through this right of way; that the appellant has never paid these assessments; that they have never been assessed to the appellant; and that no question has ever been raised by the appellant as to the right and obligation of the defendants to pay the same. While the record does not show that any of the lands owned by the defendants were deeded to them by the appellant, it does show that the Northern Pacific Railroad Company has deeded to other parties lots in the city of Spokane situated within the 400 feet of right of way, upon which valuable improvements have been made by its grantees.

The questions involved in this case are: (1) Adverse possession of respondents; (2) that the action was barred by the statute of limitations; (3) equitable estoppel by the laches and misconduct of appellant. The questions of fact were put in issue by the pleadings, were submitted to a jury and found in favor of the several defendants, and the court upon said findings entered its decree declaring the title of said lands to be in the defendants. Under our statute, the right to commence an action of this kind is barred after ten years' possession on the part of the defendants, and it may be conceded that the bar is effectual in this case if the statute of limitations runs against the appellant. It is contended by the appellant that it does not, and there is considerable discussion on the proposition of whether the interest of the company in this right of way is merely an easement, or whether it is possessed of a fee simple title. As we view the law, however, these questions are immaterial; for, if the statute runs in one instance, it would in the other. It is the contention of the appellant that the statute does not run against it, for the reason that the right of way is granted in the interest of the public, and that it would be against public policy to allow the company to alienate its right of way, thereby depriving it of the power to carry on the business in aid of which the franchise was granted, and that it must necessarily follow that, if the company could not alienate its lands, public policy would equally prevent an alienation through process of law; that the statute of limitations presupposes a grant by the true owner; and the appellant's predecessor having been the true owner and the title to the land having been acquired by the defendants subsequent to the acquiring of title by the appellant, that no grant by the true owner had ever been made, and consequently that the statute of limitations did not apply. The statute of limitations, we think, is not

based upon such a thought, but is purely and essentially a statute of repose, in the interest of the stability of titles and of good morals. One holding land adversely to the rights of another can be divested only by the action of the other, even with a better right, within the time prescribed by the statute of limitations, and this is true, even though he may have originally entered under a void grant or sale. But his claim ripens into a perfect title and becomes absolute, if such possession is not disturbed within the time prescribed. As is said by 3 Washburn on Real Property (5th ed.) p. 176:

"The operation of the statute takes away the title of the real owner and transfers it, not in form, indeed, but in legal effect, to the adverse occupant. In other words, the statute of limitations gives a perfect title. The doctrine is stated thus strongly, because it seems to be the result of modern decisions, although it was once held that the effect of the statute was merely to take away the remedy, and did not bind the estate, or transfer the title."

That the statute of limitations is a statute of repose has been decided by all modern authority, including many decisions from this court. See *Wickham v. Sprague*, 18 Wash. 466 (51 Pac. 1055). There are no exceptions under our statute, and it must apply to the case at bar, unless the appellant's right to commence the action is guaranteed by some higher authority. The statute is as follows:

"§ 4796. Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued. . . .

"§ 4797. . . . Within ten years,—1. Actions for the recovery of real property, or for the recovery or possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of the action."

It will be observed that this case does not involve in any manner a construction of the act of congress incorporating the Northern Pacific Railroad Company, or the granting to the company of its right of way. Neither is this an action against the company, as many of the actions are which are cited by the appellant. There is no attempt here to bind the company by an *ultra vires* agreement, but the attempt is on the part of the company to repudiate executed contracts and rights which have grown up through the laches, negligence, and direct agreements of the company. Neither is this an action where the court has attempted to determine how much of the right of way was necessary for the railway company to use in operating its road, but it was a determination of the fact of how much of the right of way the railroad company had abandoned, and how much of the right of way, according to its own determination, it did not need for the purpose of operating its road, and how much it could abandon without defeating the purpose for which the grant was made. Of the cases cited by appellant, the strongest one favoring its contention, and the only one, therefore, which it is necessary for us to notice is *Northern Pacific R. R. Co. v. Smith,* 171 U. S. 260 (18 Sup. Ct. 794) ; and it is claimed by the appellant that in this case the rule was clearly announced that the company could not abandon any portion of its right of way. There are some expressions used by the court in this case which give plausibility to appellant's contention, but there are so many different propositions involved in the case that it is hard to tell upon what exact proposition the case was decided. Great stress seems to have been placed by the court upon the defect in Smith's deed, and an examination of the cases cited by the court shows that the exact question raised in this case was not involved or considered seriously in that, although it was decided in that case that

the court had no right to determine the question of how many feet had been used and occupied for railroad purposes by the company, and that it was entitled to the number of feet that were granted to it by the government. The concluding remark of the court is as follows:

"The precise character of the business carried on by such tenants is not disclosed to us, but we are permitted to presume that it is consistent with the public duties and purposes of the railroad company; and, at any rate, a forfeiture for misuser could not be enforced in a private action;"—

a proposition which certainly cannot be controverted. But in that case the company was in possession of the lands sought to be obtained by Smith, the allegation being that it had been, more than six years prior to the commencement of the action, in possession of the premises. So that no question of adverse possession and user or of the statute of limitations was involved; and we do not think that the supreme court of the United States, notwithstanding some expressions which are made in this case and which were not necessary for its determination, would, under the circumstances of this case, deprive these defendants of their homes and property where a title had been obtained through the government, and where, by consent, agreement, and acquiescence of the company, time and money had been expended in their improvement during all these years of quiet and undisputed possession. If the doctrine of estoppel can ever be invoked, it seems to us that it should be invoked in this case against the appellant. In any event, the question of protecting the rights of the government is not one which can be raised by the appellant. If the rights of the government are in any way involved or jeopardized by the possession of these lands by the defendants, the government may act in the premises unaided by the appellant, whose negligence and laches have been

the cause of these investments by the defendants. The appellant should not be allowed to escape the consequences of its own wrongful acts, and reap a fraudulent benefit, by pleading the rights of the government. Indeed, our government is presumably founded upon equitable principles, not in theory alone, but in practice, and the citizen has a right to expect equitable treatment, even at the hands of the government; and it has been held that in good conscience the government is frequently estopped from asserting rights which would destroy the equitable rights of the citizen. In *State ex rel. Attorney General v. Janesville Water Power Co.,* 32 L. R. A. 391 (66 N. W. 512), it was held that leave would not be granted to the state to institute an action to forfeit the franchises of a solvent, active corporation, carrying out the purposes of its creation in supplying the necessities of a large number of people, whose securities are held by innocent persons, in the absence of a clear wilful misuse, abuse, or nonuse of its franchises. In that case the court quotes from *Commonwealth ex rel. Attorney General v. Bala & B. M. Turnpike Co.,* 153 Pa. St. 47 (25 Atl. 1105), where the court held that, in case of delay accompanied by circumstances which would estop individuals, the state was equally estopped. There the circumstances showed that a corporation had been allowed to proceed and expend large sums of money when the facts relied upon in the application for leave to bring the action to forfeit the franchises were notorious. Held, that the delay, under the circumstances, created an estoppel so as to effectually prevent the institution of such proceedings. The court, in effect, said: If the complainant were a private individual, the court would not hesitate to say that his laches were a bar; and the same rule holds good notwithstanding the application is by the attorney general on behalf of the state. The question involved is not one under

the statute of limitations, but one of laches, which may be imputed to the state as well as to an individual. While time does not run against the state, time, together with other elements, may make up a species of fraud, and estop even sovereignty from exercising its legal rights,—citing *Willmott v. Barber,* L. R. 15 Ch. Div. 105; *Attorney General v. Johnson,* 2 Wils. Ch. 102; *Attorney General v. Delaware & B. B. R. Co.,* 27 N. J. Eq. 1. The court, concluding, said:

"The principles here maintained should be quite rigidly applied where, as in this case, the corporation has not merely been allowed, but has been compelled, by those chiefly interested and the real moving parties, to proceed at great expense, under the franchises sought to be annulled, for a considerable period of time, while the facts relied upon as grounds for forfeiture have been all well known."

This language might be appropriately applied to the facts in this case, and could as well be applied to the individual defendants here as to corporate defendants there; for these defendants have not only been allowed to possess these lots, but the title to them has been conveyed to them by the government of the United States after a compliance on their part with the requirements of the law in relation to pre-emption and homestead claims, and after, in addition to the expense and time necessarily involved in obtaining title under these acts from the government, the expenditure of many thousands of dollars in creating permanent improvements on these lands, and in paying many thousands of dollars assessments for the improvement of streets, in addition to other taxes for the benefit of the government, with the knowledge and acquiescence, and in some cases the actual agreement, of the appellant. It is also held in *Commonwealth v. Turnpike Co., supra,* that where a turnpike company is allowed, without objection,

to expend a large amount of money in extending its road, under authority of and a decree of court, a commonwealth is estopped to question the regularity of the proceedings under which such authority was granted. There again the court said:

"In England, from whence we derived the great body of common law, and most of our principles in equity, it is well settled that while time will not run against the crown, yet time, together with other elements, may make up a species of fraud and estop even sovereignty from exercising its legal rights;"—

citing *Attorney General v. Johnson, supra,* where there was an attempt on behalf of the crown to restrain a purpresture in the river Thames, and the court refused to entertain the bill because of the delay on the part of the attorney general in instituting the proceeding. Citing, also, *Attorney General v. Sheffield Gas Consumers Co.,* 3 De Gex, M. & G. 304. See, also, *Attorney General v. Delaware, etc., R. R. Co.* 27 N. J. Eq. 631.

As showing that the rule that the company cannot alienate any part of its right of way is not to be literally construed, it has been decided that a railroad company to which congress has granted a right of way across the public lands and sections of lands adjoining such right of way, in aid of the construction of its road, has power to dedicate to the public the right to cross its tracks and right of way. *Northern Pacific R. R. Co. v. Spokane,* 64 Fed. 506 (12 C. C. A. 246).

On the proposition that, when a corporation has made contracts in violation of its powers, the validity of such contracts can be questioned only by the government, see *National Bank v. Matthews,* 98 U. S. 621.

No case is cited by the appellant which holds that a railway company may not lose a part of its right of way by adverse possession, by abandonment or estoppel, and we do

not think that any case can be found which advances those propositions, but many courts have held the reverse. In *Pittsburgh, etc., Ry. Co. v. Stickley,* 155 Ind. 312 (58 N. E. 193), it was held by the supreme court of Indiana that adverse possession, acquiesced in by the company for the statutory period, prevented a recovery, and we cannot do better than insert a portion of the opinion of the court in that case:

"Appellant finally insists that land acquired by a railway company for right of way or station purposes cannot be taken from it by adverse possession, because a railroad is a public highway, and because the statute forbids interference with the company's exclusive use. A railway company owes certain duties to the public, but it holds and uses its property for the profit of its stockholders. The cases holding that the statute of limitations affords no defense to actions for encroachment upon streets and roads, are inapplicable. A railroad is not a public highway in the sense that it belongs to the people. Railroad officers are not governmental agents whose laches creates no bar. It is true that, for reasons of public policy, a judgment creditor will not be permitted to destroy a railroad by cutting it into parcels on execution sales, if the company resists. . . . If a company voluntarily disable itself to perform its duties to the public, its charter may be forfeited. But there is no reason why a railway company should not be permitted to dispose of land it does not need in fulfilling its public duties, or why, if it disposes of land it does need, it should not be compelled, if it wishes to avoid a forfeiture of its charter, to re-acquire the land by purchase or condemnation. It is true that the statute entitles a railway company to take land in fee and forbids interference with the company's exclusive use. But the right to the exclusive use (which is an incident to every unqualified ownership) must be asserted. If one occupies adversely for twenty years land owned by a railway company, the statute of limitations should raise the presumption of a grant, for the company holds its lands for private gain as a private proprietor. The state confers

the power of eminent domain to enable railway companies to perform efficiently their duties as common carriers. But it is not apparent. why the state should be concerned in preventing investors in railway stocks from sustaining loss through the negligence of their agents;"—citing *Illinois, etc., R. R. Co. v. Houghton,* 126 Ill. 233 (18 N. E. 301; 1 L. R. A. 213, 9 Am. St. Rep. 581); *Illinois, etc., R. R. Co. v. O'Connor,* 154 Ill. 550 (39 N. E. 563); *Illinois, etc., R. R. Co. v. Moore,* 160 Ill. 9 (43 N. E. 364); *Donahue v. Illinois, etc., R. R. Co.* 165 Ill. 640 (46 N. E. 714); *Illinois, etc., R. R. Co. v. Wakefield,* 173 Ill. 564 (50 N. E. 1002); *Matthews v. Lake Shore, etc., Ry. Co.* 110 Mich. 170 (67 N. W. 1111, 64 Am. St. Rep. 336); *Bobbett v. South Eastern Ry. Co.,* L. R. 9 Q. B. Div. 424; *Norton v. London, etc., Ry. Co.,* L. R. 13 Ch. Div. 268; *Erie, etc., Ry. Co. v. Rousseau,* 17 Ont. App. 483.

In *Matthews v. Lake Shore, etc., Ry. Co., supra,* it was held that, after a right to use land as part of its right of way had been granted to a railroad company, and such company fenced its right of way excluding such land, and thereafter the grantor conveyed the land to the plaintiff, who inclosed the same and used it for crops and pasturage, openly and continuously, without the assent of the company, for more than fifteen years, the plaintiff acquired title by adverse possession. To the same effect are numerous other cases. In fact, it seems to be the universal authority.

The case of *Northern Counties Investment Trust, Limited, v. Enyard,* 24 Wash. 366 (64 Pac. 516), cited in appellant's reply. brief in support of the position that possession for more than the statutory time on a railroad right of way was not adverse, but permissive, shows, on examination, that the circumstances surrounding it were altogether different from the circumstances surrounding the case at bar. Under the circumstances of that case it was held that the occupancy of a portion of the right

of way of the railroad company by the owner of a servient estate was not inconsistent with the easement, the occupation there being for the purposes of farming the land embraced in the right of way. We do not desire to extend the rule enunciated in that case. But, whether or not the facts in that case warranted the conclusion reached by the court, certainly the circumstances shown by the record in this case will not justify the conclusion reached in that, that the occupancy of the defendants, taken in connection with the improvements and the use to which the improvements were put, was not inconsistent with the appellant's right to use the same for railroad purposes.

In consideration of all the circumstances surrounding this case, and of the underlying principles governing rights and remedies, we are of the opinion that the judgment should be affirmed.

REAVIS, C. J., and FULLERTON, MOUNT, ANDERS, HADLEY and WHITE, JJ., concur.