[No. 4397.  Decided January 3, 1907.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. THE
CITY OF SPOKANE et al., *Respondents.*[1]

ADVERSE POSSESSION—RAILROAD RIGHT OF WAY—EFFECT OF GRANT.
Where a railroad grant conveyed 400 feet for a right of way, which
the company could not alienate, but by a subsequent act of Congress,
alienations of portions of the right of way were approved, provided
the right of way was not diminished to a less width than one hun-
dred feet on each side of the center line, title may be acquired, as
against the company, by adverse possession of the portions of the
right of way which were more than one hundred feet from the center
line.

SAME—EVIDENCE—SUFFICIENCY.   There is sufficient evidence to
show hostile adverse possession of portions of a railroad right of
way, inconsistent with the rights of a railroad company, where such
portions were platted as parts of additions to a city, stakes driven
to mark the boundaries, plats filed and taxes paid, with a general
recognition in the community of ownership, and the same assertion
of exclusive dominion as over the other lots in the addition, when
the lands were originally taken possession of by an entryman on the
public domain, and possession since continued under patents purport-
ing to convey the whole title.

SAME—PLEADING—ADMISSION.   In an action to recover possession
of real estate, a complaint alleging possession in the defendant, and
asking possessory relief, admits that such possession was adverse.

RAILROADS—RIGHT OF WAY—STREET CROSSINGS—ESTOPPEL.  A rail-
road company is estopped to deny that platted and dedicated streets
of an addition extend across its right of way, where it had platted
and dedicated its own addition showing such crossings, and had
recognized the rights of the city in streets in other additions by pay-
ing the amounts assessed to its right of way for improvement of the
streets.

Appeal from a judgment of the superior court for Spo-
kane county, Belt, J., entered May 20, 1902, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, in an action to recover possession
and quiet title to real estate.  Affirmed.

[1]Reported in 88 Pac. 135.

*Stephens & Bunn,* for appellant.

*John P. Judson* and *Judson & Geraghty,* for respondents.

HADLEY, J.—This is an action to quiet title to and obtain possession of certain lands which the plaintiff, Northern Pacific Railway Company, claims as a part of its right of way. From a judgment in favor of the city of Spokane and of W. M. Ridpath, as special administrator of the community estate of Anthony M. Cannon and Jennie F. Cannon, deceased, the plaintiff has appealed.

The questions involved in this appeal are similar to those involved in *Northern Pac. R. Co. v. Ely,* 25 Wash. 384, 65 Pac. 555, 87 Am. St. 766, 54 L. R. A. 526. The appeal has been long pending in this court, but it was not submitted until the recent term by reason of pending review of the decision of this court in the *Ely* case. It was held by this court, in that case, that adverse possession of parts of the railroad right of way, for purposes inconsistent with the company's use of the easement, and maintained by the adverse occupant for the statutory period of limitation prescribed against actions for the recovery of real estate, bars an action by the company to recover possession. That decision was rendered June 29, 1901. Thereafter, on May 4, 1903, the supreme court of the United States, on writ of error to the supreme court of Minnesota, reversed a holding of the latter court which was essentially the same as our own holding in the *Ely* case. *Northern Pac. R. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044. As a conclusion to the argument in the opinion reversing the *Townsend* case, the court said:

"To repeat, the right of way was given in order that the obligations to the United States assumed in the acceptance of the act might be performed. Congress having plainly manifested its intention that the title to and possession of the right of way should continue in the original grantee, its successors and assigns, so long as the railroad was main-

tained, the possession by individuals of portions of the right of way cannot be treated without overthrowing the act of Congress as forming the basis of an adverse possession which may ripen into a title good as against the railroad company."

Later, on writ of error to this court, the *Ely* case was also reviewed by the Federal supreme court. *Northern Pac. R. Co. v. Ely*, 197 U. S. 1, 25 Sup. Ct. 302. In the opinion in the latter case the decision in the *Townsend* case, *supra*, was cited and followed, necessitating the reversal of the decision of this court. It was pointed out, however, that in the *Townsend* case the court was dealing with the original right of way, which was of a width of four hundred feet, and that since that decision, to wit, on April 24, 1904, an act of Congress, entitled "An act validating certain conveyances of the Northern Pacific Railroad Company and the Northern Pacific Railway Company," was approved. 33 Stat..538. That act contains the following:

"*Provided*, That no such conveyance shall have effect to diminish said right of way to a less width than one hundred feet on each side of the center of the main track of the railroad as now established and maintained."

The court in the *Ely* case construed the above act as having been intended, in view of the decision in the *Townsend* case, to have the effect to narrow the right of way to two hundred feet in width, so far, at least, as outside of that strip there had been any parting with the original right of way. Speaking of the effect of that construction in its applicability to the rights involved in the *Ely* case, the court said:

"So far as title to portions of the right of way could be lawfully acquired from the railway company, defendants below, appellees in the supreme court, had acquired title to their parcels by adverse possession, and occupied the same position as if they had received conveyances, which the act of April 28, 1904, operated to confirm. The act is remedial and to be construed accordingly. The lots of some of the defend-

ants were outside of the two hundred feet. The lots of others were partly within and partly without the strip. But the act was passed after the judgment of the supreme court was rendered and while the case was pending here, and it must be left to the state courts to deal with the matter in the light of the conclusions at which we have arrived."

We have reviewed the above course of decision in order to show that the case at bar is subject to the rule announced by the Federal supreme court in the *Ely* case, and also to that announced by this court in the same case, so far, at least, as rights outside of the two hundred feet strip are concerned. It follows that, by adverse possession title may be acquired to land outside of the two hundred feet strip, but not to any within it. The rights represented here by respondent Ridpath, as special administrator, concern lands without the two hundred feet strip, but within the four hundred feet strip of the original right of way; that is to say, the disputed territory consists of two strips, each one hundred feet in width, and each lying on the outer edge of, but within, the original four hundred feet of right of way. Therefore, the only question left for determination now is whether there has been adverse possession, and for a sufficient time to divest appellant of its title. Appellant argues that such possession has not been shown. The complaint alleges that respondents are in possession of that part of the right of way which is not in possession of the appellant. Actual possession of respondents is, therefore, admitted and alleged by appellant, and the prayer of the complaint asks that the cloud created by respondents' occupancy of the premises shall be removed, and that appellant shall be adjudged entitled to the possession. Actual possession being thus admitted, it remains to be determined whether it is shown to have been hostile and adverse to appellant.

The trial court found that the possession was adverse for a period of more than ten years prior to the commencement of this action. The lands were originally included in the

descriptions in United States patents issued either to A. M. Cannon or to his grantors. It is true the adoption of the line of definite location of the railway across these lands in the year 1880 had the effect to make them subject to the burden of the original grant of the railway right of way. But we think the evidence shows continuous actual possession in the entrymen, patentees, and their grantees, from the time of the original entries of that part of the original right of way in controversy here. The circumstances show that the possession could not have been otherwise than adverse. It was in no way consistent with appellant's use of the land as a right of way. The lands were platted as parts of additions to the city of Spokane. Necessary stakes were driven as monuments to mark the boundaries of platted subdivisions and streets. The plats were filed for record, taxes were paid by the occupants, there was general recognition of respondents' claim of ownership in the community, and there was the same assertion of exclusive dominion over these lands as was manifested over the other lots in the same additions. All these things were incidental to the possession which was taken by the original entrymen, and are circumstances tending to show that the possession never changed from them and their grantees to another. The plats covered a strip one hundred feet in width on either side of the original right of way; thus leaving a strip two hundred feet in width, with the center line of the track of the railway as the center of the strip, entirely undisturbed by the plats. These are strong circumstances. The acts were openly hostile, and we think show conclusively that there was never any intention of abandoning possession of the two strips in question. Possession being both admitted by the pleadings and shown by the evidence, it follows, from the nature of the acts and circumstances attending that possession, that it has always been adverse to appellant and under claim and color of title, inasmuch as the possession was first taken by the entrymen and continued under patents of the United States which actu-

ally purported to convey the identical land in controversy. The test of adverse possession must be that it is such as would subject one to a possessory action. There was such possession here, and furthermore, we think that appellant, by alleging possession in the complaint and asking possessory relief, recognized not only the fact of possession in respondents, but also its adverse nature. We therefore think the finding of the trial court is sustained, and that title by adverse possession is established.

The only other question is the right of the city of Spokane to cross appellant's right of way by its streets. Without discussing the primary right of the city in the premises, we think appellant is at least estopped to raise that question now. It platted and dedicated streets to the public across its right of way, in an addition of its own, and it has recognized the city's right in the other additions by paying the amounts assessed to its right of way for the improvement of streets in such additions.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, ROOT, CROW, and DUNBAR, JJ., concur.