Slocumb v. The C., B. & Q. R. Co.

---

SLOCUMB v. THE C., B. & Q. R. Co.

1. **Railroads:** RIGHT OF WAY: LANDS CONVEYED SUBJECT TO. Premises
adjacent to a railroad were conveyed to plaintiff, "subject to any right
of way, said railroad may own over the same." The railroad company
had previously become entitled to thirty-five feet in width from the
center line of its track as right of way, but there was nothing of record
showing the extent of such easement. The railroad was in operation
at the time, and a fence had been constructed on one side near the track.
*Held*, that plaintiff was advised by the presence of the railroad and the
recitals in the conveyances that the railroad company claimed a right

| 57 | 675 |
| 99 | 653 |
| 57 | 675 |
| o120 | 535 |
| d120 | 729 |
| h122 | 195 |
| 57 | 675 |
| 138 | 430 |
| 57 | 675 |
| 140 | 376 |
| 140 | 377 |

Slocumb v. The C., B. & Q. R. Co.

of way over the premises, and by inquiry could have learned the extent of that right; and that she must be regarded as having notice of all the facts which due and timely inquiry would have elicited.

2. ——: ——: ADVERSE POSSESSION. Under the facts in this case the plaintiff being affected with notice of the acquisition of an easement over the premises by the railroad company, could not acquire title to any portion of the right of way by adverse possession.

3. ——: DIVERSION OF COURSE OF STREAM: ESTOPPEL. Where the plaintiff stood by and saw the defendant at great expense divert the course of a small stream, which previously had touched the corner of her premises, without objection, until the work of such diversion had been completed, she will not be entitled to a mandatory injunction restoring the stream to its original channel:

The rule: "He who is silent when he ought to speak will not be heard to speak when he ought to keep silent," applied.

*Appeal from Des Moines District Court.*

THURSDAY, MARCH 23.

ON the 19th day of June, 1880, the plaintiff filed her petition alleging that she is the owner of a tract of land containing two and 40-100 acres, and that the B. & M. R. R'y Co and its successors, the C., B. & Q. R'y Co., have operated a railway adjacent to said premises for the past twenty-five years; and that the defendant, the C., B. & Q. R'y Co., has entered upon and threatens to use for railway purposes a strip of said premises of the width of about twenty-one feet, and of the length of about three hundred and fifty feet, without the consent, and without any effort to secure any right of the plaintiff. The plaintiff prays for an injunction to restrain the defendant from using, entering upon, or in any manner interfering with the land of plaintiff.

On the 15th day of November, 1880, the plaintiff filed an amendment to her petition alleging, that defendant has threatened, and is about to permanently divert Hawkeye Creek, a natural stream of water that has always flowed over said land of plaintiff, and to accomplish said diversion defendant has cut a new channel for said creek opposite to the land

of plaintiff, and filled in the bed of the creek at a point just above the plaintiff's premises, whereby the plaintiff is deprived entirely of the flow of said water on her premises. The plaintiff prays that an injunction may be granted to restrain said defendant from diverting and turning said channel in Hawkeye Creek off from plaintiff's premises. The court entered a decree giving to the plaintiff the right of possession of the strip of ground in controversy, and enjoining the defendant from interfering therewith, without first making compensation as required by law, and dismissing the plaintiff's petition as to the relief asked for the diversion of Hawkeye Creek, and ordering that the plaintiff be left to her remedy at law. Both parties appeal.

*T. C. Whitely* and *P. Henry Smyth & Son*, for plaintiff.

*Hall & Huston* and *J. W. Blythe*, for defendant.

DAY, J.—I. Prior to 1858 C. Range and G. C. Wilhelm owned certain land, embracing the premises in controversy, and agreed in parol to allow the B. & M. R. R'y Co. a right of way seventy feet wide over the same, in consideration of certain acts to be performed by said railway company. Under this agreement the railway company entered upon said land and constructed its road over it. A fence was constructed about fourteen feet from the center line of the railway, but the evidence does not show by whom this fence was built. Afterward Wilhelm and Range commenced an action against the B. & M. R. R'y Co., alleging that it had failed to perform the conditions of its agreement, and claiming $3,000 damages. The trial resulted in a judgment in favor of the plaintiff for $449, which the B. & M. R. R'y Co. paid. In 1868 the executor of the estate of G. C. Wilhelm conveyed an undivided half of the property in controversy to the plaintiff and C. Range, describing it as running to the center of the B. & M. R. Railroad, and thence along said railroad one chain

*.RAILROADS: right of way: conveyance subject to*

and fifty links, containing 2 and 40-100 acres, "subject to any right of way said railroad company may own over the same." In 1869 C. Range conveyed an undivided half of said premises to the plaintiff, describing it as above, "subject to right of way of said railroad company." The plaintiff went into possession of said premises in 1869, under these conveyances, and has continued in possession ever since. The front of these premises was about fifteen feet' above the grade of the street. The plaintiff caused the earth to be removed from the front, and taken to the rear of the premises, raising them about four feet on the side next to the railroad. Upon this the plaintiff planted raspberry bushes and cherry trees, and had an asparagus bed and a pie-plant bed. The defendant, the C., B. & Q. R'y Co., succeeded to the rights of the B. & M. R. R'y Co., and, in June, 1880, moved the fence in upon the plaintiff's inclosure twenty-one feet, and proceeded to construct an additional railway track. It is to restrain the construction of this track that this action is, in part, instituted.

As against Wilhelm and Range, it cannot be doubted that, by their parol license, and the B. & M. R. R'y Co.'s entering upon the land and constructing its railway, and the subsequent payment of the damages assessed on account of its failure to perform its agreement, it acquired a right of way thirty-five feet in width from the center of its track. The easement which the railway company thus acquired was obtained by contract, and though resting in parol could not be revoked by Wilhelm and Range. Washburne on Easements and Servitudes, page 24, and cases cited in notes.

When the plaintiff acquired her interest in the property from the estate of Wilhelm and Range, the fence stood within fourteen feet of the railroad track, and there was nothing upon record from which the extent of the easement could be determined. The plaintiff, however, was advised by the presence of the railroad, and by the recitals in the conveyances of the property to her, that the railway company claimed a right of

way over the premises, and the property was conveyed to her subject to that right. The plaintiff was also advised by the law that this right of way might extend to the width of one hundred feet, or fifty feet from the center of the railroad track. Having this information, and being thus affected with notice, it was the duty of the plaintiff to inquire of the railroad company what right it claimed in the premises. If the plaintiff had made this inquiry she would have ascertained that the railroad company claimed a right of way extending thirty-five feet from the center of its track. She must be regarded as having notice of all the facts which due and timely inquiry would have elicited. ᐧ *Marratt v. Deihl*, 37 Iowa, 250.

The plaintiff insists that her right to the strip in question has become absolute by adverse possession. She relies upon 2. ——: ——: the case of *Davies v. Heubner*, 45 Iowa, 574. In that case no portion of the width of the road had ever been opened or used from the time the road was established, in 1846, until the institution of the suit, a period of thirty years, and the plaintiff had fenced and been in the actual use of one-half of the width of the road for a period of more than ten years. The decision is grounded mainly upon the fact that no portion of the road had ever been used. It is apparent that the case is not at all analogous to the one at bar, in which the railroad company constructed its road prior to 1858, and has ever since continued to occupy and use a portion of the width of its right of way. There can be no difference in principle, in the application of the statute of limitations, in the case of a party affected with notice of the acquisition of an easement by an irrevocable parol license, and the application of such statute to an easement acquired by grant or deed.

*2. adverse possession.*

In *Barlow v. The C., R. I. & P. R'y Co.*, 29 Iowa, 276, a right of way was conveyed by deed to the M. & M. R'y Co. in 1853, which the C., R. I. & P. R'y Co. acquired in 1866, and then constructed its road. It was held upon demurrer to the

answer that the right of way was not affected by non-user, and that the statute of limitation did not bar the defendant's right, notwithstanding the fact that the answer alleged that the lands over which the right of way was claimed, during this whole period of thirteen years, had been fenced and used for agricultural purposes. This case, it seems to us, is decisive, that the defendant's right to the twenty-one feet in question is not barred by the possession of the plaintiff. The plaintiff's possession was not adverse to, nor inconsistent with, the right of defendant to occupy the whole right of way, whenever it became necessary or desirable for it to do so. See *Yeakle v. Nace*, 2 Whart., 123; *Smyles v. Hastings*, 22 N. Y., 217; *Fox v. Hart*, 11 Ohio, 414. In our opinion the court erred in restraining the defendant from the use of the strip of and in question.

II. The property in question is situated within the corporate limits of the city of Burlington. Hawkeye Creek flowed through the city, touching upon a corner of plaintiff's premises. The railroad company crossed this creek on two bridges, one near to plaintiff's premises, and the other about six or seven hundred feet therefrom. The railroad company has filled in the bed of the creek at these two crossings, and turned the channel of the creek along the side of the railway most remote from plaintiff's premises, so that the bridges are dispensed with, and the creek does not touch the plaintiff's property. The evidence shows that Hawkeye Creek does not furnish a steady flow of water that is fit for use; that it has no value for manufacturing purposes, but that it is a small stream at all times when not swollen by freshets, hardly worthy of the name of creek, except in wet times, and is simply a kind of sewer for the water of the hills, having considerable swell at times, but that during rains it sometimes attains big proportions, becoming an enemy that has to be guarded against, and that the property was benefited by the change. The work of changing the creek was com-

menced in June, and finished on the 10th day of September, 1880, at a cost of $5,302.92. Although this action was commenced on the 19th day of June, 1880, it was not until the 15th day of November, after the work had been fully completed, that the amendment to the petition was filed asking relief on account of the changing of the channel of the stream. The plaintiff insists that she is entitled to a mandatory injunction, compelling the defendant to restore the stream to its original channel. The plaintiff relies mainly upon the cases of *Corning v. The Troy Iron & Nail Factory*, 40 N. Y., 191 (1 Hand), and *Pugh v. Golden Valley R'y Co.*, 10 Reporter, page 349. In *Corning v. The Troy Iron & Nail Factory*, a mandatory injunction was allowed requiring the restoration of a stream to its natural channel, notwithstanding the fact that the defendant had, with the knowledge and express approval of the plaintiff, constructed works of a permanent and expensive character for the diversion of the stream, and was operating extensive machinery on its own land by means of such diversion. In this case, however, the stream was of the capacity of twenty horse power, and was valuable for manufacturing purposes, and the defendant owned the land upon one side of the stream, and had a lease from the plaintiff of the land on the other side of the stream for thirty-nine years, which had thirteen years to run when the diversion was made. The decision is placed upon the express ground that the plaintiff could not object to the diversion during the continuance of the lease, and that, whatever express assent he gave must have been understood by the defendant as applying only to the remainder of the term of the lease. In *Pugh v. Golden Valley R'y Co.*, *supra*, relied upon by plaintiff, the following language is employed by the court: "We entertain no doubt that the defendant's operations have a substantial diversion or operation in the course of the river, and that the plaintiff has thereby sustained an injury of such a character as to entitled her to an injunction, unless, either by any con-

sent on her part she has precluded herself from claiming it, or from the nature of the works completed by the defendants before objection, the case is one in which the court would refuse a mandatory injunction to restore things to their former condition; or, lastly, the defendants can justify what they have done under their statutory powers. There is no ground for imputing any laches to the plaintiff in the matter of her complaint. Upon the evidence it must be taken that she was unaware of the proposed interference with the river until the works which resulted in such interference were completed; and the delay between the time of her becoming aware of the interference and the commencement of the action is fully accounted for by negotiations for an amicable settlement of the dispute between her and the defendants which filled up that period."

It is apparent that these cases are not applicable to the facts of the present case. The plaintiff stood by and saw the work of diversion progressing, and it was not until after it was fully completed, at a cost of more than five thousand dollars, that she made any objection. The facts of this case bring it squarely within the principle announced by the master of the rolls in *Rochdale Canal Company v. King*, 16 Beavan, 630, " that if one man stand by and encourage another, though but passively, to lay out money under an erroneous opinion of title, or under the obvious expectation that no obstacle will afterward be interposed in the way of his enjoyment, the court will not permit any subsequent interference with it, by him who formally promoted and encouraged those acts, of which he now either complains or seeks to obtain the advantage." This principle, which is so obviously just as at once to command universal assent, is sustained by the following authorities: *The Erie Railway Company v. Railway Company*, 21 N. J. Eq., 283; *Greenhalgh v. Manchester Railway Co.*, 3 Mylne & Craig, 784; *Williams v. The Earle of Jersey*, 1 Cr. & Ph., 91; *Murphy v. Mayor*, 10 Rep., 765; *B., C. R. & M. R'y*

*Co. v. Stewart*, 39 Iowa, 267; *Patterson v. Baumer*, 43 Iowa, 477. This principle is tersely expressed in the following maxim: "He who is silent when he ought to speak, shall not be heard to speak when he ought to keep silent." The court did not err in refusing to grant a mandatory injunction for the restoration of the stream. The cause is, upon the plaintiff's appeal, affirmed, and upon the defendant's appeal,

REVERSED.