THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY v. DAVID C. SNYDER AND MARY M. SNYDER, Appellants.

Railroads: RIGHT OF WAY: POSSESSION: RIGHTS UNDER A DECREE:
1  A decree in a condemnation proceeding granting a railway company an easement for right of way purposes over the land of another has the same force as a deed so far as the right to possession and control is concerned, and any subsequent possession by the land owner, in the absence of a showing that his holding is adverse, is subservient to the rights of the railway company.

Right of Way: DECREE; TERMINATION OF PRIOR AGREEMENTS.
2  Where a railway company has acquired an easement for right of way purposes by a decree in a condemnation proceeding which contains no reservations in favor of the land owner, all prior verbal agreements between the parties concerning the use by the land owner of any part of the right of way are terminated by the decree.

*Appeal from Lynn District Court.*—HON. W. N. TREICHLER, Judge.

THURSDAY, MAY 21, 1903.

IN 1881 the plaintiff instituted condemnation proceedings for a right of way one hundred feet wide across the land now owned by the defendants, but then owned by their grantor, one Jones. Jones appealed from the award of damages made by the sheriff's jury, and the case appealed was afterwards transferred to the United States Circuit Court for the Northern District of Iowa, where it was finally settled by stipulation, and a decree entered confirming the proceedings and establishing a right of way to a strip one hundred feet wide across said land, described more particularly as "being a strip of land fifty feet on each side from the center line of said railway, as now located thereon, in Linn county, Iowa." The right of way

established by the decree passed in front of the dwelling house on the premises then occupied by Jones, and so near thereto as to take a part of the front yard, in which shade and other ornamental trees were growing. When the road was built, however, no part of the yard was disturbed. It was fenced at the time the proceedings were begun, and when the decree was rendered. Afterwards, when the plaintiff fenced its right of way, it built up to the yard fence on each side, and connected therewith. This was the condition of the fences and the yard when the defendants bought the land, and so it remained until this action was brought. The defendants' deed made no reservation of any of the right of way, and they claim that when they bought they were told by Jones that the right of way did not include any part of the dooryard, because of an agreement with the plaintiff that it should remain undisturbed. In 1895 the plaintiff undertook to extend its right of way fence across the yard on the south line of the condemned strip, and, being prevented from so doing by the defendants, brought this action to quiet its title to the disputed piece of land inclosed within the dooryard fence. The defendants pleaded adverse possession, and averred that the plaintiff had leased the same, with other lands, to a telegraph company, for the use of its poles and wires, and had received a large revenue therefrom; that such use of the right of way created an additional servitude on the land; and that they were entitled to an accounting, and a portion of the rents and profits so received. A demurrer to the cross-petition was filed, but does not seem to have been ruled upon. There was a judgment for the plaintiff. The defendants appeal.—*Affirmed.*

*Preston & Moffit* for appellants.

*J. C. Cook* and *H. Loomis* for appellee.

Sherwin, J.—There is nothing in the defendants' counterclaim. If an additional servitude has been imposed on

defendants' land, it is clear that they have no right to an
accounting of the rents and profits received
by the plaintiff from the telegraph company.
The appellants claimed, and introduced test-
imony tending to support the claim, that when the dam-
ages were originally assessed, and when the stipulated
decree was rendered in the federal court, the injury to the
dooryard was expressly excluded from consideration be-
cause of the promise made by the plaintiff's agent and
attorney that it would never molest or disturb the owners,
use thereof; and it is contended that, because of the al-
leged agreement and understanding, the defendants and
their grantors held adversely to the plaintiff under a claim
of right, and acquired title thereby to the land in ques-
tion. The defendants and their grantors have always
owned the fee title of the entire right of way, and the
plaintiff's interest therein has been an easement only. If
the defendants' grantors had conveyed this easement by
deed, describing and defining it as was done in the decree,
their continued possession of the dooryard for yard pur-
poses, the same as it had theretofore been used, would not
set the statute of limitations in motion, for, if the grantor
continues in possession after conveyance, he will be re-
garded as holding in subserviency to the grantee, either
as his tenant or trustee, "and nothing short of an explicit
disclaimer of the relation, and a notorious assertion of
right in himself, will be sufficient to change the character
of his possession, and render it adverse to the grantee."
1 Cyc. 1039. The stipulated decree had all of the force
and effect that a direct conveyance could have had, and
the owner's continued possession of the land thereafter
could by no possibility place him in a better position than
he would have been in, had he executed and delivered a
deed to the plaintiff. While the plaintiff was entitled to
the possession and control of its right of way whenever it
should deem it necessary to use it in the conduct of its

*Margin note: 1. RIGHT of way: posession: rights under a decree.*

business, it cannot be said, as a matter of law, that it might not consent to any use thereof which would not interfere with its duties to the public, and we find nothing in the record indicating that the possession or use of the yard by the defendants' grantors was in any way inconsistent with the plaintiff's right of possession or its necessities during the time in question.  *Slocumb v. The C. B. & Q. R. Co.*, 57 Iowa, 675.

Nor can the fact that before the final decree there was a promise not to disturb the owner's use of the yard change the rule above announced.   The decree settled the parties' rights thereto, and clearly defined what they were, and all prior agreements were merged therein.   The plaintiff had the

2. RIGHT of way: decree: termination of prior agreements.

right to rely fully thereon, and to presume that the owner's continued possession of the land was subservient to the easement created thereby.   When the defendants bought, they were told that the yard was reserved from the right of way grant, and they continued in the possession and use thereof just as had their grantor.   There was no change in the physical conditions, and no outward sign that they were making a greater claim thereto than he had made. Nor did the plaintiff have knowledge of the representations made to the appellants by their grantor.   It then had the right to presume that the defendants' possession was subservient to its estate, as had been their grantor's; and unless there was some other unequivocal act on the part of the defendants, brought home to the knowledge of the plaintiff, indicating a hostile intent, their possession was not adverse.   We find nothing of this kind in the record.  *Slocumb v. The C. B. & Q. R. Co.*, supra.  True, there was no reservation of the right of way in the defendants' deed, as was the case in *Slocumb v. R. Co.*, but we are unable to see how this can affect the result, for, conceding that the defendants were holding under a good-faith claim of right or title, they have failed to prove that

their possession was adverse to or inconsistent with the plaintiff's right to the land whenever it became necessary for the proper convenience and use of its business.

This is so largely a fact case that we do not deem it necessary to review the cases cited in support of the contention of counsel. The judgment is AFFIRMED.