CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, v. B. H. HANKEN, J. HEYAN, H. F. WILKIN, H. M. DIRKS ET AL.

**Railways:** DEPOT GROUNDS: ADVERSE POSSESSION. The right of way or depot grounds of a railway company cannot be encroached upon by abutting property owners so as to deprive the company of title, except by an appropriation inconsistent with such use, when needed or when actually occupied for that purpose; but a railway company having acquiesced for a long series of years in the inclosure and occupancy by an abutting owner of a portion of its grounds, dedicated merely on the town plat as depot grounds, but never actually used as such and there was no showing that it would ever be needed for that purpose, is held to have lost its title thereto.

**Same.** The mere dedication of land on a town plat as railway depot grounds will not endow the entire tract with the incidents of a public use; and the boundaries of the same are governed by the same rules as apply in the case of any other adjoining owners.

*Appeal from Jones District Court.*—HON. B. H. MILLER, Judge.

TUESDAY, NOVEMBER 24, 1908.

SUIT to quiet title to land alleged to constitute a part of plaintiff's depot grounds. The petition was dismissed, and a decree entered quieting title in the defendants as prayed in their several cross-petitions. The plaintiff appeals.—*Affirmed.*

*Ellison & Gorman, J. C. Cook,* and *H. Loomis,* for appellant.

*Herrick & Bauder,* for appellees

LADD, C. J.—The plat of Langworthy was filed January 25, 1858, by Wm. T. Shaw, and exhibits a right of way and depot ground, extending diagonally from the northeast to the southwest. On the space left for a depot is written "Dubuque Western Railroad Depot Ground." At each end of this ground the width of the right of way on each side of the track is indicated, but nothing on the plat shows the relative width of the portions of the depot ground north and south of the railway track which was constructed shortly after the dedication. The plaintiff acquired, through *mesne* conveyances, the title to the road of the Dubuque Western Railroad Company, including the right of way and depot ground. The latter was not described in these several conveyances by metes and bounds, but in general terms. This is a suit to quiet title to the depot ground as dedicated. The several defendants interposed the defenses of adverse possession, boundaries established by acquiescence, and practical location and estoppel. In 1897 Hanken acquired the unplatted land north of the depot ground, extending from the east end southwesterly by two hundred and seventy-nine rods, and included in the conveyance was a strip of said ground fifty feet wide, so that the boundary fence was but fifty feet north of the track and an extension of the right of way fence from the east. This fence appears to have been constructed at least thirty years previous to the trial, though by whom is in doubt. The railroad company reconstructed it in 1893, and this circumstance is corroborative of testimony that the original fence was erected by one of its grantors. The land was used for pasture most of the time, though occasionally put in corn. The boundary fence of Hanken extended westerly veering out from the track to near the westerly end of the depot ground. Wilkin owns several lots, to the west from Hanken's land, a vacant space lying between

the tracts, and with these lots is included a strip of the depot ground one hundred and seventy-seven feet long by about forty-seven feet wide on the east end and narrower to the west. The boundary fence is conceded to have been maintained by Wilkin and his grantors for thirty years, and numerous evergreens were planted along this fence twenty-two years ago which have grown into what one witness denominates "monarchs of the forest." A house was built in 1860 or 1861 by the owner. Shrubs also have been planted on the disputed ground which has been occupied by Wilkin and his grantors for at least thirty years; the house being only a few feet back from the line as claimed by the company. South of the track, and at the westerly end of the depot ground, the defendant Dirks occupies of that originally dedicated a strip about one hundred feet wide and three hundred and thirteen feet long, together with the lots adjoining. The fence extends northeasterly from the right of way fences, the entire distance, and has been maintained by him and his predecessors for more than thirty years. The house and outbuildings were erected on this disputed strip still longer ago, and evergreen, cottonwood and fruit trees were planted in the yard and along the fence more than twenty years since, and have grown to be large trees. Considerable of the strip east of the house is used as a pasture, but in connection with other portions of the premises. To the east of Dirks' lots are those owned by Heyan. He has been in possession of a strip of land dedicated as depot ground for sixteen years prior to the trial. The fence along that occupied by Dirks extended northeasterly for three hundred and five feet, and had been maintained twenty years when it was set over far enough by Heyan so as to leave a strip fifty feet wide at the southwesterly end of thirty-two feet wide on the east. This was used in connection with part of his lots as a pasture. The evidence does not inclose any other improvements save the

existence of trees along the fence eight or ten inches in diameter, but Heyan testified that he had always "thought the land belonged" to him, and that the company had never claimed it until a year prior to the trial, when it removed the fence to what it claimed was the true line.

From this statement of the facts, it is apparent that the plea of adverse possession can not be sustained. The defendants and their grantors did not acquire title to the

1. RAILROADS: depot grounds: adverse possession.

disputed tracts, but to the lots abutting on them, and have occupied up to the fences, because claiming the ground as part of their lots and based their possession on no other claim of right. See *Grube v. Wells,* 34 Iowa, 148, and other like decisions. But they have been in possession up to these division fences, as marking the boundaries to their lots, for a period longer than that of the statute of limitations, during which the plaintiff and its grantors have acquiesced without raising the slightest objection. The plaintiff company acquired the road in 1881, and no claim to these strips was asserted until 1904. If then the doctrine of acquiescence may be invoked in such a case, these fences must be regarded as indicating the true boundaries between the lots of defendants and the depot ground of plaintiff. *Miller v. Mills Co.,* 111 Iowa, 654; *Lawrence v. Washburn,* 119 Iowa, 109. The authorities are in conflict as to whether an abutting owner may acquire title to a portion of a right of way by adverse possession; some decisions treating the possession of a railroad company of its right of way as that of its private property to enable the corporation to perform a public duty, while others regard property acquired for right of way purposes and held in good faith for future needs as endowed with the incidents of property devoted to the public use. The decisions first mentioned are to the effect that title by adverse possession may be acquired. *Illinois Cent. R. Co. v. O'Conner,* 154 Ill. 550 (39 N. E. 563); *Louisville & N. R. Co. v. Quinn,* 94

Ky. 310 (22 S. W. 221); *Matthews v. Railway,* 110 Mich. 170 (67 N. W. 1111, 64 Am. St. Rep. 336); *Pittsburg, C., C. & St. L. R. Co. v. Stickley,* 155 Ind. 312 (58 N. E. 192). The line of decisions last referred to declares that possession by the abutting owner not inconsistent with the existence of the easement is permissive only, and can not bar the claim by the company when the property is required for the prosecution of the company's business. *Southern Pacific Co. v. Hyatt,* 132 Cal. 240 (64 Pac. 272, 54 L. R. A. 522); *Railroad v. French,* 100 Tenn. 209 (43 S. W. 771, 66 Am. St. Rep. 752); *Spottswoode v. Railway,* 61 N. J. Law, 322 (40 Atl. 505). See Warville, Equity, section 471. The point was not determined in *C., M. & St. Paul R. Co. v. Snyder,* 120 Iowa, 532, but in *Slocum v. Railway,* 57 Iowa, 675, the doctrine that property taken for the public use can not be encroached on by the abutting owner so as to deprive the railroad company of title, save by appropriation absolutely inconsistent with such use when needed, finds approval. This doctrine is quite as applicable to depot ground as right of way where condemned for such use or actually occupied for that purpose. The difference to be noted is this: The statute determines the width of a right of way, while the extent of depot ground depends on the necessities of the company.

In the case at bar, the so-called depot ground was set apart in the plat long before any railroad was constructed. It was never adjudicated by condemnation or other proceedings to be essential to any company for depot purposes, and but a small portion of it has ever been occupied by the plaintiff or its grantors for that purpose; nor is it made to appear that that part not now so occupied will be likely to be needed in the future. Merely noting its dedication on the map as depot ground did not endow the entire tract set apart with the incidents of a public use. That which was actually occupied by the company

for depot purposes may have been so used that it might not be subject to adverse possession, but certainly there is nothing in the record before us to indicate that the disputed strips ever have been so occupied, or that plaintiff or any of its grantors took or were in possession thereof for such purposes, or that these and much more will ever be needed by the company in the transaction of its business at Langworthy.

The parties have assumed in argument that plaintiff acquired title under the plat. Whether upon abandonment title would revert to the original owner or some one else, and whether such reversioner would be bound by the fixing of lines by the company, may be considered when, if ever, these questions arise. It is enough now to pass on the rights of the party originally acquiring title under dedication and those claiming under it. As neither the disputed strips of land nor the ground next to them appear to have been devoted to a public use, the doctrine of *Slocum v. Railway, supra,* ought not to be applied, but the boundaries defined the same as those between any other owners of adjoining lands. A railroad company is not compelled to fence the portion of its depot ground necessarily used by the public and the corporation in the convenient transaction of business. The same is true of the adjoining owner. The inference of an agreement upon a boundary does not arise from the obligation to fence or otherwise mark the division line, though this may add strength thereto, but from the fact that one or both the adjoining owners have in fact definitely defined such line by erecting a fence or other monument thereon, and both have treated the same as fixing the boundary between them for such length of time that neither ought to be heard to deny that it is in fact what both have by their conduct declared it. Even though neither defendants nor plaintiff were bound to erect the division fences, they were erected and have been main-

2  SAME.

tained, and this was notice to all of them of the claim that they marked the boundary between the depot ground and the several lots. No objection was raised thereto for more than twenty years, and from its long silence plaintiff must be presumed to have acquiesced in this claim.—*Affirmed.*