IOWA CENTRAL RY. CO., Appellant, v. AUGUST HOMAN, Appellee.

**Railroads:** DEDICATION OF DEPOT GROUNDS: ACCEPTANCE: BURDEN OF
1 PROOF: EVIDENCE. The burden is upon one claiming title to real property by dedication to prove not only the dedication as made in the town plat but also to show acceptance, either by direct evidence or by facts and circumstances from which an inference of acceptance can fairly arise. In this action the railway company fenced its depot grounds on the line forming the boundary line of the right of way, prior to an alleged dedication of additional depot grounds adjacent to the right of way, and the fence was thereafter maintained and once rebuilt. Soon after filing the plat containing additional grounds the owners duly executed and filed an instrument vacating that part of the plat lying adjacent to the line of right of way and fence in question, and subsequently the land involved was conveyed to other parties. *Held,* that the evidence was insufficient to show title by dedication because of the lack of proof of acceptance.

**Same:** ADVERSE POSSESSION: EVIDENCE. To sustain a claim of title
2 based on long continued possession of real property there must be a showing of actual, open and notorious possession. Proof of the mere forcible erection of a fence is not sufficient.

**Same.** Mere continuance of possession by a grantor after his con-
3 veyance will not set the statute of limitations in running; but there must also be some distinct act on his part clearly indicating that he is holding adverse to the grantee.

**Same.** Where a grantor continues in possession of the property and
4 afterward conveys the same to another by warranty deed for a valuable consideration he does an act distinctly hostile to the alleged title of the first grantee and the taking of possession of the second grantee is also hostile and adverse.
Weaver, J., dissenting.

*Appeal from Hardin District Court.*—HON. C. G. LEE, Judge.

Tuesday, June 6, 1911.

Action in equity to enjoin the interference by defendant with the erection of a fence along the alleged east line of plaintiff's depot grounds where they adjoin the premises of the defendant, and to quiet the title of the plaintiff in its depot grounds. There was an answer and cross-bill. Decree for defendant, and plaintiff appeals. *Affirmed.*

J. I. Dille, G. W. Seevers and J. H. Scales, for appellant.

Albrook & Lundy and J. S. Roberts, for appellee.

Evans, J.—The controversy between the parties as developed by the evidence and the arguments is over the ownership of a strip of land varying from thirty to fifty feet wide, and lying contiguous to the east side of the plaintiff's right of way. The nature of the controversy is not disclosed by any definite issue tendered in the petition. The petition contains no description of any real estate. It alleges plaintiff's ownership of its "depot grounds" without other description. It avers that plaintiff acquired such depot grounds in September, 1870, and this averment is admitted in the answer. It avers generally that the defendant is claiming to own a part of its depot grounds on the east side, and that he has interfered with the attempt of the plaintiff to erect a fence on its east line. The petition does not set out plaintiff's title either to the depot grounds or to this particular strip. From the evidence and the argument, however, it appears that the plaintiff claims to own this particular strip by virtue of an alleged dedication contained in a town plat executed and filed by the owners of the land included therein. The following is a copy of such plat:

I do hereby certify that the above plat of the town of Abbott was made by me and is correct, and shows the shape and dimensions of the blocks, lots, streets, alleys and other subdivisions of the N. W. ¼ of the N. W. ¼ of Sect. 35. T. 89 R. 19 West 5th P. M., and the East ½ N. E. of the N. E. of Sect. 34 T. 89 R. 19, and I do hereby further certify that the said blocks, lots, streets and alleys were surveyed by me, and that I set stones at the corners of depot grounds marked in red, and stakes at all the corners of each block and lot, size of lots 140x50 feet, width of streets 70 feet, alleys 20 feet.

W. Scott Johnson,
E. E. & Surveyor.

From the undenied allegations of the petition and from undisputed testimony in the case, the following facts

appear.   Plaintiff's predecessor, the Eldora Railway Company, acquired the right of way now owned by the plaintiff by deed in 1868.   For convenience of discussion, we will refer to the plaintiff as in existence from the beginning and treat it as standing in the shoes of its predecessors.   The plaintiff acquired its "depot grounds" in September, 1870, and at the same time went into possession of the same, and has been in possession of the same ever since, according to the averments of paragraphs 3, 4, and 5 of its petition.   In 1871, the owners of the land on both sides of the railroad laid out a town plat in the form above indicated.   This plat was filed in October, 1871.· The theory of the plaintiff in argument is that this plat purported to dedicate to ·it certain "depot grounds." Whether such plat should be construed as an attempted dedication of "depot grounds,'" or as a mere recognition of "depot grounds" already existing, is a serious question, which we will not stop now to discuss.   It may be noted, however, in passing that the only reference in the plat to depot grounds is contained in a descriptive statement of the surveyor.   No measurement or dimension of the depot grounds purports to be set forth.   That accuracy in this respect was not aimed at is indicated by the fact that the railroad is shown thereon in a straight line, whereas the undisputed testimony shows that the right of way and the track thereon were and are laid in a curve.   The plat does not purport to show this right of way as distinguished from the railroad track, or as distinguished from its existing depot grounds.   The theory of plaintiff is that by laying this plat to the ground it gives to plaintiff a strip of ground lying on the east of its original right of way. There is a serious question whether the plaintiff has in this record any competent evidence in support of its survey as applied to the ground.   Its engineer who made the survey took for his starting point an assumed location of the government corner at the northwest corner of section

35, without any preliminary proof as to the identification of such original corner. Passing these questions, however, and construing the plat in accord with the plaintiff's theory and assuming the correctness of its survey, we take up the question on its broader merits, and inquire whether plaintiff has proved its title to the particular strip which it claims in evidence and argument, but which it has not described in its petition.

I. As we understand the record, plaintiff's depot ground was already fenced along its east line prior to the alleged dedication by the town plat. This east line was the east line of the right of way. The burden is upon the plaintiff to prove its title. It is not sufficient for it to prove alone the dedication as made in the town plat. It must also prove an acceptance on its own part. Assuming that formality is not required to constitute such acceptance, and that it need not be proved by direct evidence, the burden is yet upon the plaintiff to show facts and circumstances from which an inference of acceptance can fairly arise. To this end it becomes important to consider the facts and circumstances for the thirty-odd years following the filing of the plat in question. Very soon after the filing of the plat (the exact date does not appear in the record) the same owners of the land by proper instrument duly executed and filed vacated all that part of the town plat lying east of the right of way. This was done while they were still in possession of all such land as farm land including the strip now in controversy, and presumably before any street or alley had been thrown open to the public or accepted by the public, and before any lots had been sold to any purchaser. By this instrument the owners purported to obliterate that part of the town plat and to restore it to its former condition as farm land, and as such they continued in the exclusive possession of it, farming it and controlling -

1. RAILROAD dedication of depot grounds: acceptance: burden of proof: evidence.

it. It so remained in the possession of the original owners and their devisees until the year 1888, when the particular land in controversy was conveyed by appropriate description by warranty deed to one Tuttle. Within the fourteen years following the same land was conveyed to three successive grantees by warranty deeds. From the last of such grantees, one Quackendall, the plaintiff purchased in 1902. He also took under a warranty deed. Each of these grantees took possession successively under his warranty deed, and there is no question of the good faith of any of them. For thirty-five years the plaintiff made no sign of making any claim of any kind to this land. The vacation instrument and the successive warranty deeds were all duly recorded. During all that time the plaintiff maintained a fence along the east line of its right of way. Once, at least, during those years it rebuilt its fence on the same line as before. We think these facts are clearly inconsistent with any theory of acceptance of the dedication by the plaintiff prior to the filing of the vacation instrument by the original owners.

If there was no acceptance prior to the filing of such instrument of vacation, then such instrument was legally effective to accomplish its declared purpose. It is true that such instrument does not include the "depot grounds" in its enumeration, while it does enumerate blocks and streets. But it does purport to vacate "all the said town plat on the east side of the track of the Central Railroad of Iowa." In this respect the vacation instrument is as broad as the original instrument of dedication which did not in terms make any reference to the depot grounds. The act of purported vacation and the successive warranty deeds and the successive changes of possession thereunder were all essentially hostile to any theory of interest on the part of the plaintiff; and the absence of claim on the part of the plaintiff and its conduct in maintaining and rebuilding the fence so as to exclude the strip were incon-

sistent with its present claim of ownership. Our conclu-
sion is therefore that plaintiff has not proved title in itself
for want of acceptance of the alleged dedication.

II.   There is another view of this case which seems
to us quite fatal to plaintiff's claim.  As already indicated
herein, the plaintiff did not in its petition set up any

<span style="float:left">2. SAME: ad-<br>verse posses-<br>sion: evidence.</span>

paper title in itself.  It simply alleged in
paragraphs 3 and 4 of its petition that it
acquired title to its depot grounds in Sep-
tember, 1870, and that on such date it entered into pos-
session of the same, and that it has been in the possession
and use of the same continuously ever since.  Paragraph 5
of the petition is as follows:  "Par. 5.  That your peti-
tioner has been in actual and open possession of said sta-
tion grounds in said town of Abbott at all times in the
operation of its line of railway, but it has not at all times
used every part for tracks or building sites, but has from
time to time increased the tracks and occupancy by build-
ings according to the increase in demand for such tracks
and buildings."  It is manifest, therefore, that the peti-
tion declares upon a title acquired more than one year
prior to the alleged dedication which is alleged to be sup-
ported by a continuous actual possession of more than
thirty-five years.  Whatever such paper title acquired in
September, 1870, was, it was disclosed neither by the pe-
tition nor by the evidence.  The apparent reliance of the
petition is upon the long-continued "actual and open pos-
session of said station grounds" as alleged in paragraph 5.
Taking the plaintiff at its word, and awarding to it all
the grounds of which it has had actual and open posses-
sion as alleged in paragraph 5, it must yet fail to recover
this particular strip because under the undisputed evi-
dence it has never had a semblance of actual possession
of any part of it.  In this statement we do not overlook
the fact that in 1905 the plaintiff entered upon such strip
and forcibly erected a fence thereon which the defendant

removed, but the rights of the parties were fixed long prior to such time. In view of the fact, therefore, that the plaintiff has predicated its case upon a title acquired in September, 1870, and actual and open possession thereunder, and that the main relief prayed by it is that the defendant be enjoined from interference with its alleged possession, it must recover upon that general theory, or not at all. Such theory is wholly without support in the evidence, and the plaintiff is in no position to claim in argument that it acquired its title by the later dedication.

III. Defendant also sets up a plea of adverse possession and of acquiescence in the boundary line for the period of the statute of limitations. In the case of *Railroad Co. v. Hanken,* 140 Iowa, 372, it was held that the doctrine of acquiescence as to boundary lines is applicable in a proper way to the depot grounds of a railroad company. The following excerpts from the opinion in that case are peculiarly applicable to this case on that question:

3. Same.

In the case at bar the so-called depot ground was set apart in the plat long before any railroad was constructed. It was never adjudicated by condemnation or other proceedings to be essential to any company for depot purposes, and but a small portion of it has ever been occupied by the plaintiff or its grantors for that purpose; nor is it made to appear that that part not now so occupied will be likely to be needed in the future. Merely noting its dedication on the map as depot ground did not endow the entire tract set apart with the incidents of a public use. That which was actually occupied by the company for depot purposes may have been so used that it might not be subject to adverse possession, but certainly there is nothing in the record before us to indicate that the disputed strips ever have been so occupied, or that plaintiff or any of its grantors took or were in possession thereof for such purposes, or that these and much more will ever be needed by the company in the transaction of its business at Langworthy. . . . As neither the disputed strips

of land nor the ground next to them appear to have been devoted to a public use, the doctrine of *Slocumb v. Railway, supra,* ought not to be applied, but the boundaries defined the same as those between any other owners of adjoining lands. A railroad company is not compelled to fence the portion of its depot ground necessarily used by the public and the corporation in the convenient transaction of business. The same is true of the adjoining owner. The inference of an agreement upon a boundary does not arise from the obligation to fence or otherwise mark the division line, though this may add strength thereto, but from the fact that one or both the adjoining owners have in fact definitely defined such line by erecting a fence or other monument thereon, and both have treated the same as fixing the boundary between them for such length of time that neither ought to be heard to deny that it is in fact what both have by their conduct declared it. Even though neither defendants nor plaintiff were bound to erect the division fences, they were erected and have been maintained, and this was notice to all of them of the claim that they marked the boundary between the depot ground and the several lots. No objection was raised thereto for more than twenty years, and from its long silence plaintiff must be presumed to have acquiesced in this claim.

In the case at bar, as already indicated, the company never made any use of the strip in controversy, public or otherwise. It is shown that no part of the town extends to the east side of the railroad. There is no attempt made in the evidence to show that the company will have any public use for this strip in the future. It is said in argument that the company needs it for the purpose of trimming or cutting trees thereon which obstruct the view of the railway crossing. Plaintiff offered no evidence, however, on that subject. We have, therefore, a clear case, not only of want of actual possession, but an absence of necessity for public use either past or future. And we see no way to distinguish the case from the *Hanken* case, *supra,* so far as the doctrine of acquiescence is concerned.

The same rule would apply as to adverse possession, unless the party in such possession is to be deemed as a grantor of the plaintiff continuing in possession after a conveyance made by himself.

The rule in such cases is that the mere continuance of possession by a grantor after his conveyance of land does not set the statute of limitations in running. That is to say, something more than mere possession must be shown in such cases. Even in such cases, however, the statute may be set in motion by any distinct act on the part of the party in possession which sufficiently indicates to the grantee that his grantor is holding adverse to him.

If we were to say in this case that the statute was not set in motion as to adverse possession while the original grantor and his devisees continued in occupancy up to 1888, we can see no reason why the conveyance of the same property by warranty deed for a valuable consideration to a third person should not be deemed an act distinctly hostile to the alleged title of plaintiff, nor why the taking of possession by such grantee under his warranty deed should not be deemed hostile and adverse to all the world. Granting that the grantee acquired no greater rights to the property than his grantor had, and that the grantor could not terminate the rights of the plaintiff by mere conveyance to another, yet the fact remains that such a conveyance was an act distinctly and necessarily hostile to plaintiff's alleged title, and, as such, set the statute of limitations in motion. Each successive conveyance by warranty deed was a renewed declaration of hostility.

4. Same.

Without pursuing this feature of the discussion further, it is sufficient to say that the matters already discussed present insuperable obstacles in the way of awarding to plaintiff any land beyond the east line of its right of way. This was the conclusion of the trial court; and its decree is accordingly *affirmed*.

WEAVER, J. (dissenting).—As I read the record, proof of the dedication of the entire station grounds is ample, and, the possession since maintained by the railway company having been such as the present and passing needs of the company at that station have required, it has been sufficient to prevent the accruing of title by adverse possession by an adjoining owner who has extended his boundary fences beyond the true line. Such has been the holding by this court from the case of *Slocumb v. Railway Co.,* 57 Iowa, 675, to the present, and I observe in this particular case nothing calling for a modification or departure from the rule of that precedent. Again, the attempt to give the vacation of a part of the town plat effect as a vacation or withdrawal of the dedication of station grounds already in possession of the railway company so far as its immediate needs required can not in my judgment be sustained. There is in the instrument of vacation no express reference to the depot grounds, nor do I think such reference was intended or can be implied. Certainly, it could in no manner affect or take away the rights already vested in the railway company.

I am also unable to understand on what theory the court can properly say there is no evidence of acceptance of the dedication. True, the company did not at once proceed to make use of all parts of the grounds. Such grounds are rarely limited in area to immediate needs, but, like the platted streets and alleys of a newly founded town or city, they are planned with an eye to future growth and development, and the only acceptance needed to make them effectual is entrance and use to an extent proportioned to the present demand for such conveniences. Subsequent entry thereon or use of a part thereof by strangers to the title is presumed to be permissive only, and not hostile in character. *Taraldson v. Lime Springs,* 92 Iowa, 189; *Shea v. Ottumwa,* 67 Iowa, 39.

Considerable is made in the majority opinion of the

alleged failure of the plaintiff to assert or prove title in itself. I think that upon a fair reading of the pleadings and observance of the theory on which the case was tried it should be said the plaintiff's paper title was not in dispute, and the sole question considered and tried was whether defendant had made good his defensive claim of title by adverse possession. On that issue the. burden was on the defendant, and, as I view it, there was distinct failure of proof.

It is profitless to go into a review of the testimony. I am not able to agree with the conclusion announced, and therefore register my dissent.