MINERVA BEYER, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS: Reclaiming Unused Part of Right of Way.** A railway company may, in the interest of public safety· and the proper operation of its road, repossess itself of an unused part of its deed-acquired right of way, irrespective of *any* length of possession in another which was *permissive* only, which was not *absolutely inconsistent* with the use of the right of way for railway purposes. *Held*, the cultivation of the soil and the planting of trees thereon did not constitute such inconsistent possession.

WEAVER, EVANS, and PRESTON, JJ., dissent.

**BOUNDARIES: Acquiescence—Quasi Public Right.** Acquiescence may not, it seems, be invoked to prevent the exercise of a quasi public right, i. e., the reclamation of an unused part of a railway right of way.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

SUPPLEMENTAL OPINION ON REHEARING JULY 10, 1919.

SUIT in equity to quiet title, and for damages to real estate. Decree and judgment in favor of plaintiff. Defendant appeals.—*Reversed and remanded.*

*F. W. Sargent, Pickett, Swisher & Farwell,* and *J. H. Johnson,* for appellant.

*Sager, Sweet & Edwards,* for appellee.

STEVENS, J.—Plaintiff is the owner of a one-acre tract of land, somewhat triangular in form, located on the east side of and between a highway known as the Waterloo and

1. RAILROADS: reclaiming unused part of right of way.

LaPorte City road, and the right of way of the defendant railway company. She derived title thereto, through several mesne conveyances, from James Miles, who was the owner thereof, and planted a large number of fruit and ornamental trees thereon in 1893, several of which were located upon a narrow strip now claimed by the defendant as a part of its right of way; and this strip forms the subject of this litigation. The defendant acquired its right of way by deed, which conveyed to it a strip of land 25 feet in width on each side of the center line of the railroad, to have, hold, and enjoy forever, for any and all uses and purposes in any way connected with the construction, preservation, occupation, and enjoyment thereof, provided, however, that, in case defendant ceased to permanently use its road, or if same should be abandoned or the route changed, then the land granted should revert to the grantors, or to their heirs or assigns.

The strip of land in controversy lies immediately west of defendant's right of way fence, and at its widest place is approximately 4 feet and 8 inches in width. On June 3, 1914, defendant's employees entered and cut the trees upon the disputed strip, and plaintiff claims that they also cut a

cherry tree upon her premises outside thereof.  Suit was brought by her for damages on account of the removal of the trees.  Defendant filed answer and cross-petition, setting up its right, under the above deed, to a strip 25 feet in width as a right of way on each side of the center of its road, and claimed the right to possession of the disputed strip as a part thereof, subject only to the right of reversion, as above stated.  Upon the issues joined, the cause, upon motion of defendant, was transferred to and tried in equity.

Plaintiff's claim to the disputed tract is based upon adverse possession and acquiescence by defendant in the right of way fence for more than ten years, as the true boundary line between its right of way and plaintiff's premises.

.It was stipulated by the parties upon the trial that the right of way fence at the point nearest the highway crossing was 20 feet and 4 inches from the center of defendant's road, and, at a point 6 rail lengths south thereof, 21 feet and 8 inches from the center of the track, thus leaving a narrow strip of defendant's original right of way of approximately 4 feet in width outside of its right of way fence.  The stipulation further provided that plaintiff and her grantors had cultivated the ground up to the fence, and had gathered the fruit growing thereon, and that they had been in possession thereof during all the time since the fence was erected, many years ago.

Testimony was offered by plaintiff to the effect that, about 15 years before this controversy arose, and while Miles owned the same, defendant's employees attempted to change the right of way fence at the place in question, and dug a string of post holes on her premises 50 feet west of the center of defendant's track, but that, upon investigation, it was found that the right of way deed conveyed a strip to defendant of only 25 feet in width on each side of the center

of its road; and the proposed erection of the fence along the line of the post holes was abandoned, and the fence reconstructed on its original line.

Defendant's track approaches the premises of plaintiff from the south in a northwesterly direction; but, before reaching the same, curves farther to the northwest, and continues to curve until the crossing over the Waterloo and LaPorte City highway is passed. There was a large number of trees standing on the north end of plaintiff's premises, which extended from the railroad right of way to the highway fence. The reason assigned by defendant for removing the trees from the disputed strip is that they were thick, and the longer branches extended over the right of way so far that they touched the cab of a passing engine, thereby obstructing the view of travelers approaching the highway crossing from the south, so that they could not see a northbound train until the crossing was reached. It was claimed by defendant that the obstruction caused by the trees rendered the crossing dangerous, and that several fatal accidents had occurred there. The evidence does not, however, show that they were due to the presence of the trees; but the crossing was doubtless rendered more dangerous by them, and same were a menace to the safety of travelers upon the highway.

The contention of counsel for appellant is that it never abandoned the strip in controversy, and that, in so far as the same was occupied and used by plaintiff and her grantors, the use was permissive only, and that possession thereof by appellant was not taken until it became necessary, in the operation of its road; that the doctrine of adverse possession and acquiescence are not applicable to the facts; that plaintiff did not hold possession of the disputed strip adverse to the defendant; that the right of way fence was not on the line, nor was it ever so treated; and that plaintiff acquired no right or title to said strip by reason of the

long-continued occupancy and use thereof by herself and grantors.

Both parties rely upon former decisions of this court to sustain their respective theories, and we will, therefore, briefly review a few of the cited cases. There is considerable lack of harmony in the decisions of other jurisdictions; but this court announced the rule applicable to the facts of this case in *Barlow v. Chicago, R. I. & P. R. Co.*, 29 Iowa 276, which has been followed up to the present time, as appears from what follows. In that case, it was held that the statute of limitations does not apply, where the easement was acquired by deed; and that no length of mere non-user will operate to impair or defeat the right of way; and that the use of the premises under consideration by the plaintiff, as shown in that case, for the statutory period, was not adverse to the rights of defendant.

The facts in the case at bar and those in *Slocumb v. C., B. & Q. R. Co.*, 57 Iowa 675, are quite similar. In that case, plaintiff had occupied a portion of the defendant's right of way outside of its right of way fence for

2. BOUNDARIES : acquiescence : quasi public right.

more than ten years, had planted the same to shrubbery and fruit trees, and had done grading and filling thereon, for the purpose of improving and beautifying the same. In that case, the court held that, as the defendant was entitled to a right of way 100 feet in width, or 50 feet from the center of the railway track on each side, plaintiff was charged with notice of the extent of defendant's right of way, and could readily have ascertained the true width thereof. The court said :

"The plaintiff's possession was not adverse to, nor inconsistent with, the right of defendant to occupy the whole right of way, whenever it became necessary or desirable for it to do so."

*Chicago, M. & St. P. R. Co. v. Hanken*, 140 Iowa 372,

and *Iowa Cent. R. Co. v. Homan,* 151 Iowa 404, are cited in the briefs of both appellant and appellee, but principal reliance is placed by defendant upon our holding in *Helmick v. Davenport, R. I. & N. W. R. Co.,* 174 Iowa 558.

The court, in *Chicago, M. & St. P. R. Co. v. Hanken,* supra, discusses the conflict in the authorities in other jurisdictions, but re-affirms the doctrine of *Slocumb v. C., B. & Q. R. Co.,* supra. We quote the following from the opinion:

"The line of decisions last referred to declares that possession by the abutting owner not inconsistent with the existence of the easement is permissive only, and cannot bar the claim by the company when the property is required for the prosecution of the company's business. *Southern Pac. Co. v. Hyatt,* 132 Cal. 240 (64 Pac. 272, 54 L. R. A. 522); *Railroad v. French,* 100 Tenn. 209 (43 S. W. 771, 66 Am. St. 752); *Spottiswoode v. Railway,* 61 N. J. L. 322 (40 Atl. 505). See Warvelle on Equity, Section 471. The point was not determined in *Chicago, M. & St. P. R. Co. v. Snyder,* 120 Iowa 532; but in *Slocumb v. Railway,* 57 Iowa 675, the doctrine that property taken for the public use cannot be encroached on by the abutting owner so as to deprive the railroad company of title, save by appropriation absolutely inconsistent with such use when needed, finds approval. This doctrine is quite as applicable to depot ground as right of way where condemned for such use or actually occupied for that purpose. The difference to be noted is this: The statute determines the width of a right of way, while the extent of depot ground depends on the necessities of the company."

The court emphasized the fact that the land in controversy had never been devoted to public use, and it was not shown that same would ever be needed by the plaintiff in the transaction of its business, and, therefore, the doctrine of the *Slocumb* case was not applicable.

The court, in *Iowa Cent. R. Co. v. Homan,* supra, said: "In the case at bar, as already indicated, the company

never made any use of the strip in controversy, public or otherwise.  *  *  *  There is no attempt made in the evidence to show that the company will have any public use for this strip in the future.  It is said in argument that the company needs it for the purpose of trimming or cutting trees thereon which obstruct the view of the railway crossing.  Plaintiff offered no evidence, however, on that subject. We have, therefore, a clear case, not only of want of actual possession, but an absence of necessity for public use, either past or future.  And we see no way to distinguish the case from the *Hanken* case, supra."

The decision in the above case was by a divided court, the division, however, turning upon the question whether the doctrine of the *Slocumb* and other cases was applicable to the facts under consideration, and not upon a difference in opinion as to the soundness of the holding in the *Slocumb* case.  The decision of the court in the *Helmick* case is not inconsistent with the doctrine of the above cases.  It must be read and analyzed with reference to the peculiar facts involved.  The conclusion reached by the court is entirely sound.

There is little controversy in the facts in the case at bar, but it is vigorously insisted by counsel for appellee that the evidence offered to show the alleged dangerous character of the crossing and that the disputed strip was necessary in the operation of appellant's road is wholly immaterial.  The deed in *Barlow v. Chicago, R. I. & P. R. Co.*, supra, contained provisions similar to those in the deed conveying the right of way to defendant.  The court in that case held that the legal effect of the instrument was to convey only a right of way.  The trees, consisting of cherry, plum, and maple, were planted in 1893.  For several years, the defendant's employees cut the overhanging branches, so as to remove the obstruction, so far as possible, without cutting the trees.  That the trees materially obstructed the

view of an approaching north-bound train at the highway crossing is apparent from the evidence; and, it need not be added, this necessarily contributed, to some extent at least, to render the crossing more dangerous. Railway companies are not required to fence their right of way in this state, but only their tracks. Section 2057, Supplement to the Code, 1913. The requirement of the statute that their tracks be fenced is intended for the protection of stock, and the right of defendant to the use of its entire right of way, whenever the same becomes necessary in the operation of its road or the transaction of its business, is not in any way affected thereby. In fact, a railroad company commonly uses, especially where there is but a single track, only a small part of its right of way, but it is given the right by statute to the use of a strip 100 feet in width, if necessary, in the transaction of its business. The evidence, however, in this case shows that the right of way at the place in question was but 50 feet in width. It is not contended that the disputed strip is not a part of the right of way granted to defendant. The doctrine announced in the *Barlow* case has been consistently adhered to from the time of its announcement to the present day. A clear distinction exists between the facts in the cases in which the doctrine of the *Barlow* and *Slocumb* cases was not applied, and the facts in the case at bar. The possession of plaintiff and her grantors was clearly permissive only, and was not adverse to the defendant nor inconsistent with its right to the use thereof whenever the public safety and the operation of its road and the transaction of its business rendered the occupation thereof necessary. The evidence offered by defendant upon this question was, therefore, material and competent.

So far as the evidence discloses, the attempt upon the part of the employees of defendant to erect a right of way fence 50 feet west of the center of its track, while Miles owned the land, was made upon the belief that the right of

way was 100 feet in width, and that the fence was recon-
structed upon the original line, without measurement or
survey to determine the exact line.   Evidently, the fence
gang rebuilt the fence upon the original line because it
could not be removed as contemplated, and not in recogni-
tion of some pretended claim on the part of Miles to the
ownership of the disputed tract.

It appears from the evidence that one of the fruit trees
destroyed was upon premises belonging to plaintiff.   The
evidence relates to the damages claimed by plaintiff on ac-
count of the removal of the tree in question, and the large
number of trees from the disputed strip.   We are, therefore,
unable to determine the extent of plaintiff's damages on
account of the removal of the tree from her premises.   The
decree of the court below, for the reasons above pointed
out, must be reversed, but the cause will be remanded to the
district court for further proceedings in harmony with this
opinion, to determine plaintiff's damages.—*Reversed and
remanded.*

LADD, GAYNOR, and SALINGER, JJ., concur.

WEAVER, J. (dissenting).   I.   I am persuaded that the
foregoing opinion is out of harmony with our precedents,
and is unsound in principle.   The case of *Barlow v. Chicago,
R. I. & P. R. Co.*, 29 Iowa 276, does not appear to be in point.
There, the landowner had sold and conveyed a right of way
for a projected railway, and there was nothing in the con-
veyance limiting or prescribing the time within which the
grantee should take possession or build the road.   Later,
and after several years, the grantee of the easement con-
veyed it to another company, which took possession and used
it.   The owner of the land from which the right of way
had been carved out, taking the position that, because of the
delay in constructing the road, the easement had been lost
by non-user, brought an action to recover damages on ac-

count of the taking of the right of way by the second company. The court expressly found that there had been no adverse possession of the right of way, and that a mere non-user did not work a loss or forfeiture of the easement. It did not hold that there could be no loss of such an easement by adverse possession under any circumstances, and indeed, under the record as there made, such a holding would have been dictum. The case presented no question of disputed boundary lines or of acquiescence in any given line, and its decision has little, if any, value in determining the rights of the parties to the present controversy. The case of *Slocumb v. C., B. & Q. R. Co.*, 57 Iowa 675, cited by the appellant, is more relevant upon the issue of adverse possession; and, under the peculiar facts of that case, and as explained and applied in *Chicago, M. & St. P. R. Co. v. Hanken*, 140 Iowa 372, and *Helmick v. Davenport, R. I. & N. W. R. Co.*, 174 Iowa 558, its authority is still recognized. It may be said of it, however, as we have noted with reference to the *Barlow* case, that it does not hold that a right of way easement may not be lost by adverse possession, but rather, that no possession or use will be considered adverse which is not clearly inconsistent with the right of the railway company to occupy the whole right of way when it elects to exercise such right. The opinion in *Chicago, M. & St. P. R. Co. v. Snyder*, 120 Iowa 532, states the doctrine with the same limitation: that is, that possession taken of part of a right of way by an adjoining owner will not be adverse "unless there is some unequivocal act on his part brought home to the knowledge of the railroad company indicating a hostile intent." In neither the *Barlow, Slocum,* nor *Snyder* cases is any reference made to the doctrine of location of boundaries by acquiescence, which, in later years, has been one of the most important subjects of inquiry in adjudicating disputed boundary lines. Indeed, the present prevailing rule with reference thereto had its

first explicit recognition in this state in Chapter 8 of the Laws of the Fifteenth General Assembly, providing for an action or proceeding "to establish disputed corners and boundaries," since embodied in Chapter 5, Title XXI, of the Code of 1897. For a considerable period after this enactment, no special consideration of the question was had by this court; and in the course of time, when the rule of *Grube v. Wells*, 34 Iowa 148, holding, in effect, that the statute of limitations would never run in favor of a landowner who extends his possession beyond the boundary by mistake, was found to be capable of producing absurd results, if not applied with discrimination, the court, in *Miller v. Mills County*, 111 Iowa 654, went into a thorough discussion of the subject, and it was explicitly ruled that, where owners of adjoining tracts expressly or tacitly recognize a given line or fence as a true boundary between them, and for ten years have occupied up to such line, asserting no claim to any land beyond it, it is to be regarded as the true line, although it may be demonstrable that it is not the line of the government survey. The rule so stated was deduced as a logical result of principles which had found approval in some of our prior decisions, and much direct authority for it was cited from the courts of other states, though the statute to which I have referred was not mentioned. Since the announcement of that decision, it has been cited and followed by us in cases too numerous and too familiar to call for specific mention. The first precedent citing and applying this rule to a disputed boundary between railway property and an adjacent owner is *Chicago, M. & St. P. R. Co. v. Hanken*, 140 Iowa 372. The opinion in that case was prepared by Mr. Justice Ladd, who also wrote the *Miller* case. The action was brought by a railway company to exclude several different persons from certain tracts of land claimed by the plaintiff as part of its station grounds; and the defendants, in resistance to such claim, pleaded both

the statute of limitations and the alleged acquiescence of both parties in the boundary claimed by the defendants for more than ten years. The opinion finds that the plea of adverse possession was not sustained by the proof, but that the defense of acquiescence had been fully established. In so holding, the court says:

"The inference of an agreement upon a boundary does not arise from the obligation to fence or otherwise make the division line, though this may add strength thereto, but from the fact that one or both the adjoining owners have. in fact, defined such line by erecting a fence or other monument thereon, and both have treated the same as fixing the boundary between them for such length of time that neither ought to be heard to deny that it is, in fact, what both by their conduct have declared it."

We next find the question raised in *Helmick v. Davenport, R. I. & N. W. R. Co.*, 174 Iowa 558. There, as in the *Hanken* case, the plea of adverse possession was subordinated to that of acquiescence. In that case, as in this. the dispute was over a narrow strip of land; and while the defense of adverse possession was discussed, and apparently thought to be good, the plea of acquiescence was held to have been well sustained. In this connection, the opinion quotes from the *Hanken* case the following, which is also very appropriate to the facts in the present record:

"Even though neither defendants nor plaintiff were bound to erect the division fences, they were erected and have been maintained; and this was notice to all of them of the claim that they marked the boundary between the depot grounds and the several lots. No objection was raised thereto for more than 20 years, and from its long silence, plaintiff [the railway company] must be presumed to have acquiesced in this claim."

The parties to this case did put up a fence between them; they did occupy to the fence on either side; plaintiff

did work upon and improve the narrow strip on her side in a manner clearly indicating her claim of right to the land. This was done under the eye of the railroad company for 15 years or more, and the company manifested its acquiescence in her claim, not only by its prolonged silence, but also by its act in cutting for several years the branches of plaintiff's trees which overhung the right of way from her enclosure. That is, instead of removing the trees entirely, —which, if the company's claim as now made is correct, it could have done,—it trimmed back only the branches which overhung its undisputed right of way, an act in perfect keeping with a recognition of her ownership up to the fence. That there was a mutual and entire acquiescence in the line as marked by the fence is scarcely open to doubt.

II.    Is there anything in our written or unwritten law which exempts a railway company from the effect of its acquiescence in a boundary line? I have no hesitation in saying there is not. While the law permits a company to condemn a right of way up to 100 feet in width, the company is under no obligation to acquire or maintain it up to any given width. The provision for 100 feet is simply a limit beyond which the company has no right to condemn. There is no minimum limit in the statute. If this company had sold or quitclaimed that four-foot strip to the plaintiff, would not her title be unimpeachable against any further claim of right or title in her grantor? If the boundary between her property and the company's right of way had been in dispute or uncertain, and they had entered into a contract that the line of the fence now on the ground should be accepted as the true line, and thereupon both parties had adjusted the possession and use of their premises to correspond to such line, could either party at will repudiate the agreement? These questions answer themselves, and every lawyer will say, without hesitation, that such a deed would be effective, and such an agreement enforcible. If

this be true, why, then, would not the same parties be bound by their acquiescence in a boundary line in the same manner and to the same extent that the respective owners of adjoining farms or adjoining town lots conclusively bind themselves to a boundary in which they have acquiesced for more than ten years?

I can see no ground upon which to say that the trial court erred in its conclusion. The showing that the highway crossing is made dangerous by the presence of plaintiff's trees on the strip in controversy, or that the growth of the company's business makes the use of this strip desirable in the operation of its road, appears to me wholly irrelevant. They constitute, perhaps, good reasons for saying that appellant ought not to acquiesce in the existing line, but they are not evidence that it did not acquiesce. In my judgment, the case is one for affirmance.

PRESTON, C. J., and EVANS, J., concur.

### SUPPLEMENTAL OPINION.

STEVENS, J.—Appellee, in her petition for rehearing, contends that the conclusion reached by the majority in this case is in conflict with the holding of the court in *Helmick v. Davenport, R. I. & N. W. R. Co.*, 174 Iowa 558. The view of appellee is substantially expressed in the dissenting opinion of Mr. Justice Weaver, which was concurred in by two other members of the court. The majority of the court, however, adhere to the view expressed in our former opinion in this case; and, in so far as the holding in *Helmick v. Davenport, R. I. & N. W. R. Co.* is in conflict with the conclusion therein announced, it is overruled. The following portion of the majority opinion in this case is withdrawn:

"The decision of the court in the *Helmick* case is not inconsistent with the doctrine of the above cases."

With this supplement to our former opinion, the petition for rehearing is overruled.